Julius **DUCRE**

v.

**MINE SAFETY APPLIANCES CO., et al.**

Civ. A. No. 80–4338.

United States District Court, E.D. Louisiana.

Oct. 2, 1986.

Bendana & Carlton, Orlando G. Bendana, Wayne H. Carlton, Jr., New Orleans, La., for Julius Ducre.

Bailey & Leininger, Leon A. Aucoin, Mark D. Kuss, Thomas J. Eppling, Metairie, La., for intervenor.

Johnston & Duplass, Gary M. Zwain, Robert M. Johnston, Lawrence J. Ernst, Christovich & Kearney, New Orleans, La., for Pulmosan Safety Equipment Corp.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, James L. Selman, II, New Orleans, La., for Mine Safety Appliances Co.

U.S. Dept. of Justice, Phyllis Pyles, Sr., Trial Atty., Washington, D.C., Thomas L. Watons, Asst. U.S. Atty., New Orleans, La., for U.S.

James L. Donovan, Metairie, La., for Transamerica Ins.

William S. Marshall, Jr., Alan D. Weinberger, Hammett, Leake & Hammett, Charles Hanemann, Jr., Henderson, Hanemann & Morris, New Orleans, La., for Minnesota Min. & Mfg. Co.

Felicien P. Lozes, Lozes & Lozes, Thomas E. Loehn, New Orleans, La., for Commercial Union Ins. Co.

Andre J. Mouledoux, New Orleans, La., for Traders & General Ins. Co.

Craig R. Nelson, Hulse, Nelson & Wanek, New Orleans, La., for American Universal Ins. Co., Clemco Industries.

Vance E. Ellefson, William J. Larzelere, Jr., Anthony J. Staines, Lugenbuhl, Larzelere & Ellefson, New Orleans, La., for Robert Gardebled, Harold Halter, Richard Neyland, Mirl Halter, James Dubuisson, Codee Brogan, Joseph Norra and Calvin Luc.

Sondra A. Cheek, Bogalusa, La., for L. Cunningham, M. Altmann, E. Cunningham & A. Seligman, R. Seligman, C. Smith, H. Gaines, J. Henderson.

Bruce J. Borrello, Metairie, La., for Liberty Mut. Ins. Co.

Emery N. Voorhies, Normann & Normann, New Orleans, La., for Fidelity & Cas. Ins. Co.

Frank J. Peragine, Michael R. Daigle, New Orleans, La., for American Optical Corp.

Courtenay, Forstall, Grace & Hebert, Carl J. Hebert, New Orleans, La., for Underwriters at Lloyds London.

Faris, Ellis, Cutrone, & Gilmore, Gary A. Lee, New Orleans, La., for Certain Underwriters at Lloyd's London.

## MEMORANDUM OPINION

ARCENEAUX, District Judge.

Before the Court is the motion for summary judgment of Commercial Union Insurance Company (CU), the motion for declaratory judgment of Certain Underwriters at Lloyd's, London, and other companies, and the motion for partial summary judgment of Underwriters at Lloyd's, London (collectively Lloyd's). The issue presented is the amount of insurance coverage provided by the insurance policies written by CU. Oral argument was held on September 10, 1986. At the hearing, the Court ruled that liability under the insurance policies issued by CU would be determined on a yearly basis, and that CU would be on the risk for each plaintiff asserting a claim for each policy period during which the plaintiff was exposed to silica dust. The Court did not rule as to whether CU would be liable up to the "per person" or the "per occurrence" limits, and stated that supplemental written reasons would follow. The Court now decides this issue.

## FACTS

CU issued one-year general comprehensive liability policies for the executive officers of Avondale Shipyards, Inc. (Avondale) for each calendar year from 1965 through 1969, with bodily injury liability limits of $25,000 per person and $50,000 per occurrence. The policy issued for the period from January 21, 1971, through January 21, 1972 had limits of $250,000 per person and $500,000 per occurrence.[1] Lloyd's issued the excess policies of insurance during these periods.

The policies in effect for the calendar years of 1965 and 1966 provide bodily injury coverage, as identified in the "occur-

rence endorsement," wherein occurrence is defined as:

"Occurrence" means either an accident or a continuous or repeated exposure to conditions which results during the policy period in injury to persons or real or tangible property which is accidentally caused. All damages arising out of such exposure is substantially the same general conditions shall be considered as arising out of one occurrence.

The policies in effect during the calendar years 1967, 1968, 1969, and the January 21, 1971 to January 21, 1972 policy, provide that:

"occurrence" means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured;

Further, the limits of liability section states that:

... the limit of bodily injury stated in the schedule as applicable to "each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one occurrence; but subject to the above provision respecting "each person", the total liability of the company for all damages because of bodily injury sustained by two or more persons as the result of any one occurrence shall not exceed the limit of bodily injury liability stated in the schedule as applicable to "each occurrence".

Subject to the above provisions respecting "each person" and "each occurrence", the total liability of the company for all damages because of (1) all bodily injury included within the completed operations hazard and (2) all bodily injury

1. Highlands Insurance Company provided insurance coverage to Avondale for the period of January 1, 1970 to January 21, 1970. These insurance policies are not at issue, since the plaintiffs previously settled with Highlands.

CU also issued a policy effective January 1972 to July 1972 for which this Court previously held no coverage is owed because of a pollution exclusion.

In addition, CU moved for summary judgment on the policy issued for the calendar year 1964; Lloyds moved for declaratory judgment on the policies issued from 1960 to 1964. However, as the parties have neither provided these policies to the Court nor stipulated as to their contents, this ruling does not appply to such policies.

included within the products hazard shall not exceed the limit of bodily injury liability stated in the schedule as "aggregate".

\*     \*     \*     \*     \*     \*

... for the purpose of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

There is no "aggregate" limit identified in the bodily injury liability schedules.

## ANALYSIS

CU moves for summary judgment that its maximum coverage per plaintiff is the amount of the policy limit contained in only *one* of the policies in effect during plaintiff's exposure to silica dust, i.e., $50,000 per plaintiff, if exposure occurred prior to 1970. Lloyd's seeks a ruling that CU's maximum coverage per plaintiff is equal to the per occurrence policy limit for each year CU provided coverage during plaintiff's exposure to silica. The plaintiff avers that the language in the insurance policy controls; and that CU's limit of liability per claim is the "per person" limit in effect for each year in which CU provided coverage.

CU relies on the following underlined language in *Insurance Company of North America v. Forty-Eight Insulations, Inc.,* 633 F.2d 1212, 1226 n. 28 (6th Cir.1980):

Appellants are correct that the exposure theory we adopt has problems with "stacking." From 1955 through 1977, Forty-Eight held twelve different insurance policies issued by five different companies. Eleven of these policies had aggregate limits of from $300,000 to $500,000 per occurrence. The twelfth policy had an aggregate limit of $1,000,-000. The combined aggregate limit of the twelve policies is $5.6 million.

The problem is that if the inhalation of each asbestos fiber is deemed to be a separate "bodily injury", this results in the "stacking" of liability coverage to produce coverage that is many times $5.6 million. This amounts to giving Forty-Eight much more insurance than it paid for. The district court recognized the problem which stacking presented. The court stated:

In any event, *no insurer should be held liable in any one case to indemnify Forty-Eight for judgment liability for more than the highest single yearly limit in a policy that existed during the period of the claimant's exposure for which judgment was obtained.* 451 F.Supp. [1230] at 1243.

We agree with the district court. *The initial exposure to asbestos fibers in any given year triggers coverage.* However, under the terms of the policies, *additional exposure to asbestos fibers is treated as arising out of the same occurrence.* Thus, on its face, the liability of each insurer is limited to maximum amount "per occurrence" provided by each policy. We have no problem with the district court's extending the policy language so that each insurer would face no more liability per claim than the maximum limit it wrote during any applicable year of coverage.

CU also cites *Keene Corporation v. Insurance Company of North America,* 667 F.2d 1034 (D.C.Cir.1981), which held that an asbestos-related disease should be treated as any other injury, therefore, only one policy's limits can apply to each injury of a plaintiff and the insured is entitled to select that policy. Accordingly, CU argues that initial exposure to silica dust triggers coverage, and is a single occurrence; a plaintiff is entitled to collect no more than the highest single yearly limit in a policy that existed during the period of claimant's exposure for which judgment was obtained.

In determining CU's maximum potential liability, this Court is compelled to follow the case of *Insurance Company of North America v. Forty-Eight, Insulations, Inc.,* 633 F.2d 1212 (6th Cir.1980). In *Ducre v. Executive Officers of Halter Marine, Inc.,* 752 F.2d 976, 994 (5th Cir.1985), the Fifth Circuit stated:

However, having determined for present purposes, that *Porter* decided, under Louisiana law, the precise issue before us in a sufficiently similar sitting, we follow its adoption of *Forty-Eight Insulations* and require that the exposure theory be applied to the Commercial Union policies.

Thus, the Fifth Circuit explicitly determined that the exposure theory of liability as outlined in *Forty-Eight Insulations* was to be applied to the CU policies at issue. As a result this Court is required to follow *Forty-Eight Insulations*, instead of *Keene.*

Under the exposure theory, bodily injury occurs with every inhalation of silica. As the District Court stated in *Insurance Company of North America v. Forty-Eight Insulations, Inc.*, 451 F.Supp. 1230, 1239 (E.D.Mich.1978),

> The medical evidence establishes that each tiny deposit of scar-like tissue causes injury to a lung. Each such insult causing injury is an "occurrence" for the purpose of determining which coverage applies.

Accordingly, the District Court hypothesized that if a plaintiff has forty years of exposure, each insurer would be obligated to indemnify Forty-Eight Insulations for ⅟₄₀th of the judgment for each year that it provided coverage. *Id. at 1243 n. 7.* The Sixth Circuit affirmed the District Court's opinion, recognizing that "[c]umulative disease cases *are* different from the ordinary accident or disease situation." *Forty Eight Insulations*, 633 F.2d at 1219 (emphasis in original).

The language relied upon by CU in *Forty-Eight Insulations*, that "... under the terms of the policies, additional exposure to asbestos fibers is treated as arising out of the same occurrence," was written in response to the problem of stacking. Thus, if an insurance company was required to pay the "per person" or the "per occurrence" limits for each inhalation of asbestos fibers made by the plaintiff, the insurance company's liability would be infinite. To avoid the problem, therefore, the Sixth Circuit placed a limit on the liability of the insurance company, as follows:

> Thus, on its face, the liability of *each insurer* is limited to maximum amount "per occurrence" provided by each policy. We have no problem with the district court's extending the policy language so that *each insurer* would face no more liability per claim than the maximum limit it wrote during any applicable year of coverage.

*Forty-Eight Insulations*, 633 F.2d at 1226 n. 28 (emphasis added).

CU argues, based upon this excerpt, that it should be liable only up to the per occurence limits issued in any *one* policy per plaintiff, even though it issued several insurance policies. However, in the context of footnote 28, the phrase, "each insurer," means the insurer for any particular year of coverage. This is the only logical interpretation of the Sixth Circuit's opinion, since the quotation refers to the District Court's opinion; Footnote 7 of the District Court's opinion specifically refers to the hypothetical case where judgment is to be divided into the number of years of plaintiff's exposure. The Sixth Circuit and the District Court of *Forty-Eight Insulations*, determined that liability is to be pro-rated on a yearly basis over the period of a plaintiff's exposure to asbestos. *Forty-Eight Insulations*, 633 F.2d at 1224, 1225.[2]

---

**2.** The Court acknowledges that the insurance policies at issue in *Forty-Eight Insulations* had policy periods of varying lengths. However, reference to the body of the opinion leads to the conclusion that allocation is to be made by a yearly, pro-ration formula.

In Footnote 28, the Sixth Circuit noted that the aggregate limits of the various policies were $5.6 million. 633 F.2d at 1228. Thus, an argument could be made that liability should be allocated according to the policy *period,* and not

on a yearly basis. However, the policies at issue in *Forty-Eight Insulations* had aggregate limits which were to be in effect during the policy period. The CU policies do not have aggregate limits. Additionally, the majority of CU's policies were for periods of one year, while only one CU policy had a policy period of less than one year. Accordingly, it would make no difference whether allocation was made on a yearly basis or on a policy period basis. This Court concludes that pro-ration on a yearly ba-

Thus, this Court concludes that liability under the CU insurance policies shall be determined on a yearly basis, and that CU is on the risk for each plaintiff asserting a claim, for each policy period during which the plaintiff was exposed to silica dust. Further, the fact that CU issued six separate contracts of insurance to Avondale, for which Avondale paid separate premiums, is an additional reason for holding that CU is on the risk for each policy issued.

Finally, more than one CU insurance policy should be on the risk because the purported damages to the claimants arose out of more than one occurrence or event. It is inaccurate to assert that all the plaintiffs were injured by a single condition—exposure to silica dust. The conditions at Avondale's facilities giving rise to the silicosis claims were scattered and varied. The claimants were exposed to different levels of silica dust at different times, under a variety of conditions, at diverse job sites, and with different types of protection over long periods of time. Thus, it is appropriate to consider the harm visited upon each plaintiff as being a separate event, and to consider the event as occurring each year.

■ The Louisiana Supreme Court considered an insurance policy containing an "occurrence endorsement," (similar to the 1965 and 1966 CU policies), in *Lombard v. Sewerage and Water Board of New Orleans,* 284 So.2d 905 (La.1973). In *Lombard,* a single construction project caused damage to the property of numerous plaintiffs. In construing the "occurrence endorsement," the court stated:

> As a rational matter, however, it can hardly be said that this construction project lasting more than one year is a single "occurrence" within the contemplation of this quoted clause. Rather, we think it is more logical to view this project as a series of "occurrences" resulting in damages during the course of this prolonged undertaking. The word "occurrence" as used in the policy must be construed from the point of view of

sis, for both primary and excess insurers is the

the many persons whose property was damaged. As to each of these plaintiffs, the cumulated activities causing damage should be considered as one occurrence, though the circumstances causing damage consist of a continuous or repeated exposure to conditions resulting in damage arising out of such exposure. Thus, when the separate property of each plaintiff was damaged by a series of events, one occurrence was involved insofar as each property owner was concerned. Notwithstanding, therefore, that the same causes may have operated upon several properties at the same time resulting in varying degrees of damage, it cannot be regarded as one occurrence, but the damage to each plaintiff is a separate occurrence.

284 So.2d at 915–916. Thus, *Lombard* found that the construction project involved a series of "occurrences," rather than a single occurrence. In the case at bar, the occurrences must be considered as arising on a yearly basis because, unlike *Lombard,* there is no "prolonged undertaking." Rather, we are presented with separate bodily injuries to claimants allegedly arising from different construction and repair jobs. Applying *Lombard* to these facts, results in the conclusion that the "occurrence" is the alleged negligence of the Avondale executive officers in failing to disclose to the plaintiffs that breathing in silica dust could be hazardous, and in allegedly failing to maintain proper working conditions. This "occurrence" should be construed from the viewpoint of each of the plaintiffs. To avoid the problems of "stacking," the "occurrence" is considered as arising on a yearly basis, instead of each day the plaintiff reported to work, or each breath taken by the plaintiff, or according to some other method. In *Lombard,* as to each plaintiff, the property damage occurred when only one policy was at risk. In the case at bar, the various plaintiffs' exposure to silica dust occurred over a period of several years, and at varying job sites. Thus, more than one CU policy was

equitable and fair solution.

at risk during the years of exposure, and is available to provide coverage.

Accordingly, if a plaintiff prevails, this Court shall allocate liability on a *per year* basis. The amount of the judgment shall be divided into the total number of years of a plaintiff's exposure, to obtain a judgment amount per year.

■ The remaining issue is whether CU is liable up to the "per person" or the "per occurrence" limits of the policies. The Court finds that the "per person" limit is the appropriate maximum level of liability. The District Court in *Forty-Eight Insulations* used the "highest single yearly limit in a policy that existed during the period of the claimant's exposure." 451 F.Supp. at 1243. However, the CU policies differ from the policies construed in *Forty-Eight Insulations*, in that no "aggregate" limits are present. Additionally, we can find no language regarding "one person one accident," or "more than one person one accident," as was used in *Forty-Eight Insulations*, 451 F.Supp. at 1234.

In *Lombard*, 284 So.2d at 915, the Louisiana Supreme Court applied the "per occurrence" limit in a property damage situation. However, interpretation of "occurrence" language under an insurance policy is different for property damage than for bodily injury damage. *Ducre*, 752 F.2d at 992–

993. Generally, insurance policy limits for property damage are "occurrence" and "aggregate" limits. Obviously, in the property damage context, "per person" limits are not applicable. In cases of bodily injury damage, the "per person" and "per occurrence" limits are used. Thus, *Lombard* used the lowest policy limit available under its insurance policy. Applying *Lombard* to the CU policies, would lead to the conclusion that the lower "per person" limits should be used.

Finally, Avondale bought and paid for excess insurance from Lloyds. Thus, to apply the "per person" limit would comport with the parties' intent.

■ The Court holds that for each year during which a plaintiff was exposed to silica dust at any time, CU is on the risk up to the "per person" limits in effect for that particular year. Any unused amount of coverage may not be carried over to a different year in which CU did not provide coverage, or in which higher coverage limits were in effect. Similarly, in any year in which CU's limits are insufficient to meet a judgment, the excess insurers shall be liable up to their policy limits on a yearly basis.

An example outlining this allocation method follows:

Judgment for plaintiff = $1,000,000.

Plaintiff's exposure to silica = 10 years.

| INSURANCE CO. | YEAR | JUDGMENT/ YEAR | PER PERSON LIMITS OF PRIMARY POLICY | AMOUNT OWED BY PRIMARY INSURANCE COMPANY |
|---|---|---|---|---|
| A | 1 | $ 100,000 | $ 50,000 | $ 50,000 |
| A | 2 | 100,000 | 50,000 | 50,000 |
| A | 3 | 100,000 | 50,000 | 50,000 |
| B | 4 | 100,000 | 100,000 | 100,000 |
| B | 5 | 100,000 | 100,000 | 100,000 |
| B | 6 | 100,000 | 100,000 | 100,000 |
| C | 7 | 100,000 | 150,000 | 100,000 |
| C | 8 | 100,000 | 150,000 | 100,000 |
| C | 9 | 100,000 | 150,000 | 100,000 |
| C | 10 | 100,000 | 150,000 | 100,000 |
| | | $1,000,000 | | |

Insurance Company A owes = $ 150,000
Insurance Company B owes = 300,000
Insurance Company C owes = 400,000
Amount of judgment not = 150,000
   covered by insurance

$1,000,000

In this example, if the insured had excess insurance coverage during the entire ten year period which provided for limits of $1,000,000, excess of the underlying policies, the excess insurer would owe $150,-000; i.e. the sum of the excess insurer's exposure for each of the three years for which the primary insurer's applicable limits were inadequate.

Accordingly,

IT IS ORDERED that:

1) for each calendar year 1965 through 1969, CU's liability is limited to the "per person" liability of $25,000, per plaintiff.

2) for the year of coverage beginning January 21, 1971, through January 21, 1972, CU's liability is limited to the "per person" limit of $250,000, per plaintiff.

3) before any rulings can be made on any other insurance policies, the parties must either provide copies of the policies, or stipulate as to their contents.