576 So.2d 586 (1991)
Mrs. Audrey DAVIDSON, wife of/and Salvadore DAVIDSON
v.
UNITED FIRE & CASUALTY COMPANY.
No. 90-CA-0849.
Court of Appeal of Louisiana, Fourth Circuit.
February 28, 1991.
*587 Orr Adams, Jr., Law Firm of William J. Wegmann, Metairie, for defendant/appellee United Fire & Cas. Co.
Celeste Brustowicz Miller, Bienvenu, Foster, Ryan & O'Bannon, New Orleans, for defendant/appellee South Carolina Ins. Co.
Sidney L. Shushan, Claude A. Schlesinger, Guste, Barnett & Shushan, New Orleans, for plaintiffs/appellants.
Before SCHOTT, C.J., and LOBRANO and BECKER, JJ.
LOBRANO, Judge.
The issue presented for our review in this appeal is whether Salvadore and Audrey Davidson's (the Davidsons) home owner's insurance covers damage to their residence as a result of termite infestation.
The policy periods in question are as follows:

South Carolina Insurance Company (SCIC) insured the home from March 6, 1982 to March 6, 1983;

Mission National Insurance Company (MNIC) insured the home from March 6, 1983 to March 6, 1985;[1]

United Fire and Casualty Company (UFCC) insured the home from March 6, 1985 to March 6, 1986.

FACTS:
The Davidsons purchased their home at 6039 Providence Place in March, 1962. A certificate dated November 1, 1961 shows *588 that termite-proofing was completed by D.A. Exterminating Company before the sale. In 1970 the Davidsons built an addition to the house. Termite-proofing was completed on the addition in August, 1970 by United Chemical Company. No further termite treatment was done to the home until 1975.
In 1975, a representative of Orkin Exterminating Company, while scouting the Davidsons neighborhood for evidence of termites, discovered termite infestation around the periphery of their home. He informed them of his findings. Further inspection revealed termite damage in the master bedroom and front bathroom. The Davidsons retained Orkin to exterminate the existing termites and to termite-proof the entire structure. The re-treatment contract with Orkin continued annually until 1978 when the contract was cancelled. There were no repairs done in the master bedroom and front bathroom. No further treatment or inspections were done to the residence.
Sometime around mid-March, 1985, while cleaning shelves inside a closet, Mrs. Davidson discovered a "black mud hole" in the ceiling. When she poked it with a kitchen knife she discovered live termites. Upon further inspection she found additional areas of infestation. Approximately thirty to sixty days prior to this, ceramic tiles had been falling off the wall above the tub and window in the master bathroom. Mrs. Davidson then connected the loose falling tiles with the termite damage inside the wall. Following this discovery, the Davidsons treated the infested areas themselves. Mrs. Davidson then telephoned her insurance agent in order to file a proof of claim with UFCC, the Davidsons' home owner's insurer at that time. UFCC subsequently denied coverage. On December 27, 1985, the Davidsons filed suit against UFCC. On July 27, 1987, the Davidsons amended their original petition adding SCIC and MNIC as additional defendants.
Trial was held on May 22 and 23, 1989 before Commissioner John Holahan. Commissioner Holahan held that the Davidsons failed to prove there was a "collapse" during the policy periods. Specifically he found that:
"There are three (3) separate locations, not interconnected, where termite damage was discovered; the master bathroom; the boys' bedroom; and, the den. While the termite damage is extensive and should be repaired, there was no evidence that the structure was in danger of collapse, in the ordinary sense of the word. The structural members studs, wallplates, ceiling joist, plates, etc. which have been subjected to termite damage at an unproven time in the past, are reenforced by sheeting, exterior brick work and the structural integrity of the roof itself, which offers sufficient safety factors and redundancy of support to render the house habitable without danger, as it has been and is now by the Plaintiffs."
After argument the trial judge accepted the Commissioner's findings of fact and law and rendered judgment in favor of UFCC and SCIC. The Davidsons perfect this appeal.
Considering their various assignments of error, the question for review is whether the trial court committed manifest error in finding that the Davidsons failed to prove coverage.[2]
The applicable policy provisions are as follows:
SCIC:
"11. POLICY TERM: This policy applies only to loss under Section 1 or bodily injury or property damage under Section 11, which occurs during the policy term. (emphasis added).
* * * * * *
This policy insures against direct loss to the property covered by the following perils as defined and limited herein:
14. Collapse of buildings or any part thereof but excluding loss to outdoor equipment, awnings, fences, pavements, patios, swimming pools, underground pipes, flues, drains, cesspools and septic *589 tanks, foundations, retaining walls, bulkheads, piers, wharves, or docks all except as the direct result of the collapse of a building. Collapse does not include settling, cracking, shrinkage, bulging or expansion." (emphasis added).
UFCC:
"Section 1. PROPERTY COVERAGE
* * * * * *
Additional coverages.
* * * * * *
Collapse. We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:
c. hidden insect or vermin damage;
Collapse does not including settling, cracking, shrinking, bulging or expansion."
Plaintiffs assert that because the "collapse" was hidden inside the walls, the point in time when it occurred is not susceptible of proof. For this reason, they argue that a multi-trigger or exposure theory should be applied to find coverage. In support of their position, the Davidsons refer this court to the holdings in Lombard v. Sewerage and Water Board of New Orleans, 284 So.2d 905 (La.1973), Davis v. Poelman, 319 So.2d 351 (La.1975), Houston v. Avondale Shipyards, Inc., 506 So.2d 149 (La.App. 4th Cir.1987), writ den., 512 So.2d 459, 460 (La.1987) and Ducre v. Mine Safety Appliances Co., 645 F.Supp. 708 (E.D.La.1986).
In Lombard, numerous plaintiffs filed suit against the City of New Orleans, Sewerage and Water Board, Boh Bros. Construction Co., and their liability insurers seeking recovery for damage to their homes as a result of the construction of a drainage canal. The event which triggered coverage in that case was an "occurrence" defined in the policy as "either an accident or a continuous or repeated exposure to conditions which results during the policy period in injury to person or real or tangible property which is accidentally caused."
The policies provided limits of $50,000.00 per occurrence. The insurers argued that the construction activity constituted one occurrence, and thus their maximum liability was $50,000.00. Our Supreme Court found that defendants' negligent acts were ongoing for over a year and held that those cumulated activities, although causing damage because of continuous exposure to conditions, constituted a single occurrence for each property owner.
In Davis, plaintiffs contracted with defendant to store their airplane inside defendant's hanger. Instead of storing the plane in the hanger, defendants stored it outside exposed to the elements. Various incidents of wind damage and theft occurred between June of 1959 and December of 1960. Plaintiff sought recovery against defendant's insurer. Coverage was denied because plaintiff could not establish the date of loss.[3] As in Lombard, the coverage "trigger" was an occurrence, defined the same as in the Lombard policy. Based on the policy's definition, the court held that defendant's violation of the storage agreement was an "occurrence" which took place during the policy period, and thus plaintiff's loss was covered.
Houston and Ducre are silicosis cases involving exposure to silica dust. In both cases, the risk insured against was the damages resulting from plaintiff's everyday exposure to the silica dust. The issue was whether the insurers' limits of exposure was on a "per occurrence" basis or a "per person" basis. In resolving the issue on a per person basis, the court in Houston, relying on Ducre, concluded that repeated exposure to silicia dust constituted a yearly "occurrence" which triggered coverage. However, the policies at issue in those cases specifically defined occurrence as including "injurious exposure to conditions."
Plaintiffs assert that the rationale in the above cited cases supports their theory that hidden damage is an occurrence which triggers coverage even if no one is aware of it. We disagree.
*590 The cases relied on are clearly distinguishable. Each of those cases involves a claim, not by the insured, but by a third party under the liability portions of the respective policies. In each case the court, relying on a specific policy definition of occurrence, determined when liability coverage was triggered. In the instant case, the covered peril is not an "occurrence" as used and defined under the liability portion of the policy, but a collapse of the structure either in whole or in part during the policy period. It is collapse that triggers coverage. Thus, contrary to plaintiffs interchange of the two words, occurrence and collapse are not synonomous. Exposure to termites can cause the collapse, but the exposure itself does not trigger coverage, only a collapse. Thus, the germane issue is whether the evidence shows when, and if, a collapse occurred.
Plaintiffs further argue that they do not have the burden of proving the specific time of the collapse. Instead, they urge that since a collapse occurred at some point in time, the defendants bear the burden of proving it did not occur during their policy terms. We disagree.
For purposes of our discussion we will assume that the extensive damage found by the experts during their 1986 and 1987 inspections constitutes a collapse.[4] A party seeking to recover under an insurance policy has the burden of pleading and proving that his claim falls within the terms and conditions of the policy. Carriere v. Triangle Auto Service, 340 So.2d 665 (La.App. 4th Cir.1976), citing Myevre v. Continental Casualty Co., 245 So.2d 785 (La.App. 4th Cir.1976), appl. den., 258 La. 764, 247 So.2d 863 (1971). Thus plaintiffs had the burden of proving that it (the collapse) occurred either between March 6, 1982 to March 6, 1983 and/or March 6, 1985 to March 6, 1986. Simply because one disputed fact may be more difficult to prove than another does not lessen plaintiff's burden in this regard.
It is well settled that when a plaintiff must prove a disputed fact by a preponderance of the evidence, he must prove that the existence of the disputed fact is more probable than its nonexistence. Town of Slidell v. Temple, 246 La. 137, 164 So.2d 276 (La.1964); Perkins v. Texas & New Orleans Railroad, 243 La. 829, 147 So.2d 646 (La.1962). Therefore, irrespective of when the process began that eventually led to the collapse, in order to have coverage the evidence must preponderate that the extensive damage (assumed to be a collapse) occurred during one of the policy periods.
We find no clear error in the trial court's ultimate conclusion that plaintiff failed to prove coverage. Two experts testified at trial.[5] Both did several inspections of the home beginning in 1986 extending through 1988. The record is replete with evidence that there was extensive termite damage to the Davidson's home. However, both also stated unequivocally that there was no way to determine when the extensive damage occurred inside the walls, or over how long a period of time it occurred. Hegedus stated:
"I have seen termite damage which resulted from a very quick progression of the termites and others which took a long time to occur, not overnight, but in a few months. Sometimes it goes on for years."
Although the record reflects that some termite protection was obtained in 1962 and 1970, Orkin Exterminating Company records demonstrate that as early as 1975 termites were found around the entire perimeter of the house. There was also evidence that there was termite damage in at least two of the affected areas in 1975. This pre-existing damage was never repaired and the extent of it never determined. Annual inspections were done in 1975, 1976 and 1977. The Orkin contract was not renewed in 1978. It was not until 1987 that the house was again treated for termites.
*591 Mrs. Davidson testified that in February or early March, 1985, several bathroom tiles fell off the wall. She glued them back believing they had simply come unglued. It wasn't until mid-March, 1985 that she discovered active termite infestation in the bathroom and other areas of the house and concluded this was the reason the tiles were falling off the wall. The discovery of the infestation occurred approximately 12 days after UFCC's policy went into effect. The falling tiles occurred prior to discovery of the termites. Mrs. Davidson's testimony strongly suggests that the extensive damage, which we here assume is a collapse, took place prior to coverage by UFCC. As the trial court found, "... the extensive termite damage could not have occurred during that twelve (12) day period...".
There is even less connexity between a collapse and SCIC's policy periodMarch 6, 1982 to March 6, 1983. Mr. and Mrs. Davidson testified that they were not aware of any property damage prior to March, 1985 other than that found by Orkin in 1975. There is simply an absence of evidence which suggests that a collapse occurred during SCIC's policy period.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal to be paid by appellants.
AFFIRMED.
NOTES
[1] MNIC was in receivership at the time suit was filed against it. Only SCIC and UFCC were defendants at trial.
[2] The Davidsons assert eighteen assignments of error. However none are individually briefed.
[3] The policy at issue expired June 1, 1960.
[4] In making this assumption, it is not necessary that we address the various arguments defining the term "collapse."
[5] Architect, Imre I. Hegedus testified for the Davidsons and Civil Engineer, Ronald P. Cressy testified for UFCC.