588 So.2d 376 (1991)
Outher COLE, et al., Plaintiffs-Appellees,
v.
CELOTEX CORPORATION, et al., Defendants-Appellants.
No. 90-1387.
Court of Appeal of Louisiana, Third Circuit.
October 2, 1991.
Writ Granted January 30, 1992.
*379 Baggett, McCall & Burgess, William B. Baggett, William B. Baggett, Jr. and Rebecca S. Young, Lake Charles, for plaintiff/appellee.
Guillory & McCall, William T. McCall and Robert E. Guillory, Lake Charles, for defendant/appellant, INA.
Scofield, Gerard, Veron, Hoskins & Soileau, Michael Veron, David Hoskins, David Vaughan, II, Rudie R. Soileau and Robert E. Landry, Lake Charles, for ACands, et al.
Laborde & Neuner, James L. Pate, Ben Mayeux, Lafayette, Detrick Co.
Galloway, Johnson, Tompkins & Burr, J. Michael Johnson, Thomas J. Smith, and Larry Canada, New Orleans, for Combustion Engineering.
Larzelere, Ellefson & Pulver, Vance E. Ellefson, Metairie, for Eagle-Pitcher.
Bergstedt & Mount, Thomas M. Bergstedt, Lake Charles, for H.K. Porter.
Jones, Tete, Nolen, Hanchey, Swift & Spears, Kenneth Spears, Lake Charles, Weller, Wheelus & Green, David L. Tolin, Beaumont, Tex., Phelps Dunbar, Richard N. Dicharry, Lemle & Kelleher, Michael T. Cali, Deutsch, Kerrigan & Stiles, Janet L. McDonnell, Maria O. Stephenson, Adams & Johnson, D. Russell Holwadel, New Orleans, and Plauche, Smith & Nieset, Christopher P. Ieyoub, Lake Charles, for W.R. Grace.
Before FORET and DOUCET, JJ., and CULPEPPER,[*] J. Pro Tem.
WILLIAM A. CULPEPPER, Judge Pro Tem.
This is a suit for damages sustained from an occupational disease caused by exposure to asbestos.
Plaintiffs, John Perry, Wilson James Cormier and Dewey Derouen, worked for Cities Service at its refinery in Calcasieu Parish. They allege that during their employment they were exposed to asbestos material, used as insulation at the refinery, and had been diagnosed as having asbestosis. Numerous manufacturers of products containing asbestos, and INA, the liability insurer of certain named executive officers of Cities Service, were named as defendants. Plaintiffs alleged that the named executive officers negligently failed to provide them with a safe place to work between 1945, the year they began work, and 1976, the year that, effective October 1, the Louisiana legislature amended La.R.S. 23:1032 and barred suits against executive officers unless the conduct amounts to an *380 intentional tort. Prior to trial, plaintiffs settled with the manufacturers. The sole defendant at trial was INA, as insurer of eleven executive officers.
After a two week trial, the jury found nine of the eleven executive officers had been negligent and awarded damages in the sum of $300,000.00 to each plaintiff. In apportioning fault, the jury found the executive officers were 95% at fault and the asbestos manufacturers 5%. Consequently, the trial judge awarded each plaintiff $285,000.00 plus legal interest.
The jury did not decide the insurance coverage issues because plaintiffs and INA agreed to allow the trial judge to decide. In written reasons for judgment, the trial judge ruled that INA provided coverage for the nine Cities Service executive officers found to be negligent. A judgment incorporating the jury's verdict and the trial judge's ruling was signed on March 21, 1990. INA appeals asserting thirteen assignments of error.
ASSIGNMENT OF ERROR NUMBER 1
The jury verdicts are erroneous, as a matter of law, for lack of factual findings that each plaintiff's negligence cause of action accrued prior to October 1, 1976 (when employees' negligence actions against executive officers were abolished).
In response to this assignment of error, plaintiffs first argue that INA has waived its right to object to the lack of a jury interrogatory by failing to object specifically thereto, as required by La.C.C.P. art. 1793(C). Our review of the record shows that INA did not properly object.
La.C.C.P. art. 1793(C) provides in pertinent part:
"C. A party may not assign as error the giving or the failure to give an instruction unless he objects thereto either before the jury retires to consider its verdict or immediately after the jury retires, stating specifically the matter to which he objects and the grounds of his objection...."
It has long been held that any objection to jury instructions or special jury interrogatories must be specific and the grounds stated therefor. Bishop v. Shelter Ins. Co., 461 So.2d 1170 (La.App. 3 Cir.1984), writ den., 465 So.2d 737 (La.1985). Therefore, INA's failure to timely object constitutes a waiver of its right to raise this issue on appeal. Guidry v. Boston Old Colony Ins. Co., 540 So.2d 543 (La.App. 3 Cir.1989), writ den., 543 So.2d 7 (La.1989); Ryals v. Home Ins. Co., 410 So.2d 827 (La.App. 3 Cir.1982), writ den., 414 So.2d 375, 376 (La.1982). Thus, we find this assignment of error to be without merit.
ASSIGNMENT OF ERROR NUMBER 2
The jury erred by finding executive officer negligence for years in which John Perry and Dewey Derouen were not directly employed at the Cities Service Refinery.
The jury verdicts returned for Perry and Derouen found that one or more of the nine executive officers were negligent for every year between 1945 and 1976.
According to the record, Perry did not begin working for Cities Service until 1948. Thus, the jury's verdict finding negligence as to Perry from 1945 to 1947 was mistaken. However, we find this to be harmless error which requires only a reformation of the jury verdict. It does not change the result and does not require a new trial. The years of exposure and resulting insurance coverage are still more than sufficient to cover Perry's award.
INA claims that Derouen was employed until 1956 at the Butadiene plant which was owned by the United States government, and did not start working at the Cities Service Refinery until 1956. However, according to the record, the Butadiene Plant was operated by Cities Service throughout the years that Derouen worked there, 1945-1976. After a review of the evidence, we find that Derouen was employed by Cities Service from 1945 to 1976. Thus, we find this assignment of error to be without merit.

ASSIGNMENT OF ERROR NUMBER 3
The trial court erred by admitting into evidence a 1937 report entitled "Dust Producing Operations in the Production of Petroleum *381 Products and Associated Activities."
This report, which was published in 1937, is based on available literature on the subject, field investigations, conferences with technical specialists, and actual dust counts. Its general purpose is to show the relative hazards of dusts and the duration of exposure which may prove harmful to workers. The report was published by Standard Oil Company of New Jersey and was compiled by their chief safety inspector, Roy Bonsit.
Plaintiffs' witness, Professor J.W. Hammond, who was qualified at the trial as an expert industrial hygienist, testified that he began working for Humble Oil in 1947 or 1948 and the report was in the files of Humble's safety department at that time.
INA argues that the report is irrelevant, is not an original, and is hearsay.
Plaintiffs introduced the report to corroborate Hammond, and to show that the petrochemical industry in general knew, as far back as 1937, that exposure to asbestos dust could harm workers. This purpose is certainly relevant to the issue of whether the executive officers knew or should have known that asbestos dust was harmful. C.E. art. 401.
The report introduced is a photocopy and not the original. Under C.E. art. 1002, it must be excluded unless it falls within an exception provided by the code or other legislation. Plaintiffs argue the report falls within the provisions of C.E. art. 1003(1), that a duplicate is admissible to the same extent as an original unless a genuine question is raised as to the authenticity of the original. La.C.E. art. 901 A states that the requirement of authentication as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponents claim. Hammond's testimony is sufficient evidence to support a finding that the copy introduced into evidence is a copy of the original 1937 report published by Standard Oil. The record does not present a genuine issue to the contrary. Thus, the requirements for admissibility under C.E. arts. 1003(1) and 901 A are met.
Although we find the copy is sufficiently authenticated and identified, it must also overcome defendant's objection that it is hearsay. C.E. art. 801 C defines hearsay as follows:
"`Hearsay' is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted."
The Bonsit report is a collection of data and opinions not made by the declarants in court under oath and subject to cross examination. Thus, it is hearsay unless it was offered for some valid purpose other than the truth of the matter asserted in the report. Plaintiffs contend the report is not hearsay because it was not introduced to prove the truth of the matter asserted, i.e., that asbestos dust is harmful, but to show general knowledge throughout the industry as to the hazards of asbestos exposure, and to corroborate the testimony of Professor Hammond.
The Comment to Article 801(C) states in pertinent part:
"Paragraph C also makes clear that a non-assertive use (to prove anything other than the truth of the out-of-court statement) is not hearsay."
In their brief in this court, plaintiffs argue that even if the Bonsit report was inadmissible to prove the truth of its contents, i.e., the matter asserted, it was admissible to show the state of knowledge concerning the hazards of asbestos in the petroleum industry. This argument demonstrates the fallacy of plaintiffs' position. The "matter asserted" in the Bonsit report is the hazard of asbestos in the petroleum industry. The report was offered in evidence to prove this. Thus it is clearly hearsay.
Plaintiffs next argue that, even if it is hearsay, it falls within the ancient document exception to the hearsay rule. C.E. art. 803(16) provides:
"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * * * * *
*382 (16) Statements in ancient documents. Statements in a document in existence thirty years or more the authenticity of which is established, or statements in a recorded document as provided by other legislation."
Comment (c) under C.E. art. 803(16) states that, to be admissible under this paragraph, a document must be authenticated as provided in C.E. arts. 901(A), 901(B), and 901(B)(8), which provide:
"A. General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.
B. Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this [rule] Article:

* * * * * *
(8) Ancient documents or data compilation. Evidence that a document or data compilation, in any form:
(a) Is in such condition as to create no suspicion concerning its authenticity;
(b) Was in a place where it, if authentic, would likely be; and
(c) Has been in existence thirty years or more at the time it is offered."
The evidence satisfies the requirements of C.E. art. 901(B)(8). There is nothing about the condition of the report to create suspicion as to its authenticity. It does not appear to have been altered or forged or changed in any way. At trial, defendant made no serious attempt to create such a suspicion. The report was found by Dr. Hammond in the files of Humble Oil & Refining Company when he went to work there in 1947. This is a place where it would likely be. Clearly, as shown by Dr. Hammond's testimony and the report itself, it is over thirty years old.
Defendant cites Dartez v. Fibreboard Corp., 765 F.2d 456 (5th Cir.1985), for its holding that a document found in the private files of a witness is suspicious. That case is distinguished on the facts. Here, the document was not found in the private files of Dr. Hammond but in the files of Humble Oil & Refining Company, a place where it would likely be.
We conclude the report is admissible as an ancient document and that the statements therein are not excluded by the hearsay rule.
ASSIGNMENT OF ERROR NUMBER 4
The jury finding that nine Cities Service executive officers negligently failed to provide these three plaintiffs with a safe work place between 1945 and 1976 amounts to a clear misapplication of the legal requirements needed to impose executive officer liability.
In Louisiana, there is a statutory duty imposed on every employer to furnish reasonably safe employment. La.R.S. 23:13 states:
"Every employer shall furnish employment which shall be reasonably safe for the employees therein. They shall furnish and use safety devices and safeguards, shall adopt and use methods and processes reasonably adequate to render such employment and the place of employment safe in accordance with the accepted and approved practice in such or similar industry or places of employment considering the normal hazard of such employment, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees. Nothing in this Section shall apply to employment in private domestic service or to agricultural field occupations."
The evidence supports the jury verdict that the nine executive officers were negligent.
H.R. Smith and his successor, Joseph Brendler, were the general managers for the Cities Service, Lake Charles, operation. No one in Lake Charles was higher in authority than the general manager. The general manager could fire anyone for cause. The organizational structure of Cities Service provided that the general manager was at the top and directly below him was the industrial relations department *383 which was an arm of the top management. Further, the structure provided that industrial relations policies would be decided by the chief or other major executive officers and implemented by the staff and line organizations such as safety and medical. M.B. Carlton was the industrial relations manager and Bert Delaune, Desmond Colvin and Mark Wentz all worked in the safety department.
Dr. J.W. Crookshank and his successor, Dr. J.W. Swafford, were the medical doctors on the site. Dr. Veronica Yates was in Tulsa, Oklahoma but it was her responsibility to see that Cities Service had a qualified and informed doctor of occupational medicine in Lake Charles.
There were monthly central safety committee meetings and monthly managers safety meetings. Joseph Brendler testified that he never missed a safety meeting. The technical and business services met regularly and the safety department answered directly to Carlton, the industrial relations manager. It was the responsibility of the industrial relations department, which answered to the general manager, through its staff, medical doctor and superintendent of safety, to adopt and formulate safety policies.
Hammond, plaintiffs' witness, testified that he knew in 1941 that asbestosis was a serious pulmonary chronic disease. He testified further that safety recommendations from 1937 included wetting the asbestos and keeping it wet before cutting or crushing in order to reduce the hazard.
All three plaintiffs testified that at safety meetings they were told to wear goggles and hard hats and to be careful not to mash their fingers. All testified that they were never told to wear respirators and there is no mention in the record that anyone was told about wetting down the material to reduce the hazard.
Personal liability cannot be imposed upon an officer simply because of his general administrative responsibility for performance of some function of the employment. He must have a personal duty towards the injured plaintiffs, breach of which specifically has caused plaintiffs' damages. Esco v. Smith, 468 So.2d 1169 (La.1985); Brown v. White, 430 So.2d 16 (La.1982); Canter v. Koehring Company, 283 So.2d 716 (La.1973).
After a careful review of the record, we find that these nine executive officers (including Dr. Yates who was at her job site in Tulsa) had the ultimate responsibility for insuring that plaintiffs had a reasonably safe place to work. The responsibility of safety at the work place must be that of the top manager, the managers immediately below, the safety department, and the doctors. Therefore, we find the jury did not misapply the law in finding the nine executive officers negligent.
ASSIGNMENT OF ERROR NUMBER 5
The trial court erred, as a matter of law, by failing to apply pre-comparative fault principles in apportioning liability, and failing to reduce any verdict by the virile shares of the eleven asbestos manufacturing defendants who settled prior to trial and who were stipulated to be at fault. By failing to apply pre-comparative fault principles, the trial court further erred by not finding that the negligent executive officers, if any, of plaintiffs' employer, collectively constituted a single virile share.
Plaintiffs' first response to this assignment is that INA did not introduce into the record proof that plaintiffs did in fact settle with any solidarily liable co-defendants. We do not agree. After trial, defendant filed a motion to correct the record to which plaintiffs filed opposition. Pursuant to a hearing on the motion, the trial judge signed an order correcting the record to show that plaintiffs had settled with and released the eleven defendant manufacturers of asbestos. The final judgment signed by the trial judge states the parties stipulated that the eleven released defendants were legally at fault in causing plaintiffs' injuries, which means no proof was required of INA that the released defendants were at fault.

PRE-COMPARATIVE FAULT
In this assignment, INA first contends that the trial court erred by failing to *384 apply pre-comparative fault principles in apportioning liability. We agree. The record is replete with evidence that plaintiffs' causes of action accrued prior to the Louisiana Comparative Fault Law, effective in 1980. Comparative fault is a substantive right and it may not be applied retroactively. Jones v. Gateway Realty, Inc., 550 So.2d 388 (La.App. 3 Cir.1989), writ den., 556 So.2d 27, 30 (La.1990).
Having decided that pre-comparative fault principles apply, we note that the defense of contributory negligence was available to the defendant in this case. The jury was specifically asked whether each plaintiff was contributorily negligent and the jury answered, "No." After a review of the record, we find that it supports the jury's finding of no contributory negligence on the part of plaintiffs.[1]
Combustion Engineering, Inc., a defendant in the companion case entitled Homer Champagne v. Celotex Corporation, 588 So.2d 391 (La.App. 3 Cir.1991), filed a brief arguing that the recent Louisiana Supreme Court decision in Gilboy v. American Tobacco Company, 582 So.2d 1263 (La.1991), holds that comparative fault principles should apply retroactively.
In Gilboy, the plaintiff was a longtime cigarette smoker who filed suit against various cigarette manufacturers after he was diagnosed as having lung and brain cancer. Plaintiff filed suit in 1987 and the trial court granted summary judgment to defendants, principally on the theory that plaintiff voluntarily assumed the risks associated with cigarette smoking. The appellate court affirmed and the Supreme Court reversed, holding that summary judgment was not appropriate because there were several issues of material fact. Among these issues the court mentions comparative fault. However, earlier in the Gilboy opinion, the court states that the Louisiana Products Liability Act alters substantive rights, is not retroactive and does not apply to Gilboy, thus recognizing that a statute, such as comparative fault, that changes substantive rights has only prospective effect. We do not interpret Gilboy as a definitive holding that the Louisiana Comparative Fault Law, effective in 1980, should be applied retroactively in all cases. This was not an issue and was not discussed.

VIRILE SHARES
INA next contends that the trial court erred in failing to reduce any verdict by the virile shares of the eleven asbestos manufacturing defendants who were dismissed prior to trial.
This raises a question as to whether the rights to contribution among the tortfeasors arose before 1976, when the executive officers were liable, or after 1976, when the executive officers became immune to plaintiffs' suit.
The trial court relied on Ducre v. Executive Officers of Halter Marine, Inc., 752 F.2d 976 (5th Cir.1985), and Martin v. American Petrofina, Inc., 785 F.2d 543 (5th Cir.1986), which held that a cause of action for contribution against a joint tortfeasor arises when judicial demand is made on a joint tortfeasor, and not at the time the tort is committed.
This court has squarely held that Ducre v. Executive Officers of Halter Marine, Inc., supra is wrong. In LeBleu v. Southern Silica of Louisiana, 554 So.2d 852 (La.App. 3 Cir.1989), writ den., 559 So.2d 489 (La.1990), plaintiffs developed silicosis while working as sandblasters for Southern *385 Silica. Plaintiffs sued the manufacturer of the silica. The manufacturer filed third party demands against the executive officers of Southern Silica. The trial court dismissed the third party demands, relying on the Federal Fifth Circuit decision in Ducre, supra, that the right to contribution did not arise until the demands were filed in 1986, which was long after the 1976 amendment to LSA-R.S. 23:1032 prohibiting tort suits against the executive officers. On appeal, this court reversed, expressly stating Ducre, supra is wrong in overlooking our civil law concept that subrogation of a tort victim's rights to a tortfeasor against other joint tortfeasors arises at the time of the tort. The subrogated tortfeasor steps into the victim's shoes, giving him the substantive right to file a procedural claim for contribution against other joint tortfeasors. Under this rationale, we held the causes of action in the third party demands, which arose before 1976, were not subject to the 1976 amendment granting immunity to the executive officers.
In Perkins v. Scaffolding Rental and Erection, 568 So.2d 549 (La.1990), plaintiff was injured at work in a fall from scaffolding. He sued the supplier of the scaffold and the owner of the premises. The owner was dismissed on an exception of no cause of action and plaintiff did not appeal. The supplier of the scaffolding filed a third party demand against the owner, to which the owner pleaded res judicata. The Louisiana Supreme Court held the supplier did not have an independent right of contribution against the co-tortfeasor owner, but was only subrogated to the rights of the plaintiff, and, since plaintiff's right was barred by res judicata, the supplier was also precluded. The court cited LeBleu v. Southern Silica of Louisiana, supra, with approval.
Plaintiffs argue Lebleu should not be applied retroactively because it changed established jurisprudence, citing Brown v. New Amsterdam Casualty Company, 243 La. 271, 142 So.2d 796 (1962). Lebleu did not change the law. It interpreted Civil Code articles on contribution. Moreover, we are now bound by Perkins, decided by the Louisiana Supreme Court in 1990.
Plaintiffs also cite Cajun Electric Power Co-op v. Owens-Corning, 528 So.2d 716 (La.App. 5 Cir.1988), which held the contrary position that a joint tortfeasor's claim for contribution does not arise until judicial demand is made. Insofar as Cajun Electric is contrary to our decision, we respectfully disagree.

EXECUTIVE OFFICERS ONE SHARE
INA argues next that the negligent executive officers collectively constitute one virile share. Defendant urges us to adopt the view that in the unique setting of long-term exposure to toxic substances such as asbestos, the only fair rule is to collectively treat executive officers of the same employer as a single virile share. No Louisiana case is cited to support such a rule. Defendant relies on The Uniform Contribution Among Tortfeasors Act, Section 2(b), which provides that multiple tortfeasors can be grouped together as a single share if "equity requires." INA argues that since there is only one duty owed by the employer to furnish a safe work place, equity requires there be only one liability for breach of that duty.
This court has rejected this argument in denying writs in Joseph M. Portie, et al v. Celotex Corporation, Docket Number W90-276, decided March 20, 1990. Our jurisprudence is clear. In tort cases against executive officers, each negligent executive officer is treated as a separate virile share. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Raley v. Carter, 401 So.2d 1006 (La.App. 1 Cir.1981).

AMENDMENT OF AWARDS
The jury found each plaintiff suffered damages in the sum of $300,000.00. We find that there are a total of 20 virile shares, comprised of eleven released defendants and the nine executive officers insured by INA, which the jury found to be negligent. The $300,000.00 is divided by 20 virile shares yielding $15,000.00. The figure of $15,000.00 is multiplied by nine (the negligent executive officers), yielding the sum of $135,000.00 per plaintiff. Therefore, *386 we award each plaintiff $135,000.00 in damages. The judgment appealed must be so amended.
ASSIGNMENT OF ERROR NUMBER 6
The failure to apply pre-comparative fault principles in apportionment of liability mandates the need for a new trial.
Defendant argues the court's erroneous rulings, during the trial, that liability amongst the defendants is governed by comparative fault rather than virile shares, if followed by a ruling of this court that each executive officer counts as a separate virile share, requires a new trial. Essentially, defendant contends its trial tactics had to be tailored to fit the court's erroneous rulings since, under comparative fault and insurance coverage rulings made by the court, liability of defendant was determined on a yearly basis with defendant at risk for each plaintiff for each policy year during which a plaintiff was exposed to asbestos dust. Defendant argues that, under these comparative fault and insurance rulings, as long as one executive officer was found negligent for each year of exposure, there was no need for defendant to present evidence to exonerate any other executive officers.
This assignment of error has no merit. The record, discussed briefly under assignment of error four above, shows defendant did attempt to exonerate each executive officer from negligence. Defendant succeeded in convincing the jury that two of the eleven executive officers at trial were free of negligence, but the jury found nine were liable.
Moreover, the court's ruling on insurance coverage, which we affirm in assignments of error numbers 12 and 13, were not made until after defendant's evidence was presented at trial. Thus, INA's trial tactics were not affected by these rulings.
ASSIGNMENT OF ERROR NUMBER 7
In the alternative that comparative fault principles are found to apply in apportioning liability, then the jury clearly erred by finding only five percent fault on the part of the settling asbestos manufacturers.
Since we have decided that comparative fault principles are inapplicable in this case, this assignment of error is not considered.
ASSIGNMENT OF ERROR NUMBER 8
The trial court committed reversible error by admitting into evidence certain OSHA and EPA reports and by then allowing these reports to be read to the jury.
Plaintiffs introduced into evidence position papers published by the Occupational Safety and Health Administration (OSHA) and the Environmental Protection Agency (EPA), which make certain findings of fact concerning the health effects of asbestos exposure. INA argues that these documents constitute hearsay under La. C.E. art. 801 and are not admissible under La.C.E. art. 802.
La.C.E. art. 803(8) provides that public records and reports are not excluded by the hearsay rule, even though declarant is available as a witness. La.C.E. art. 803(8)(a)(iii) specifically exempts "factual findings resulting from an investigation made pursuant to authority granted by law." The EPA and OSHA position papers clearly fall within this exception.
The first page of the EPA support document demonstrates that the findings of fact made by the EPA were made not only pursuant to authority granted by law, but were actually required to be made by law:
"When promulgating a rule concerning a chemical substance or mixture under the Toxic Substances Control Act (TSCA), the administrator is required to publish a statement on the effects of that substance on health and the magnitude of exposure of human beings to that substance. This document is a statement of these findings in support of the rule `Friable Asbestos-Containing Materials in Schools-Identification and Notification.'"
U.S. Environmental Protection Agency: Office of Toxic Substances Support Document for Final Rule on Friable Asbestos Containing Materials in School Buildings: *387 Health Effects and Magnitude of Exposure, January, 1982, page i.
Similarly, OSHA's findings of fact made in the course of its amendment of its previous standard regulating occupational exposure to asbestos were actually required to be made by the U.S. Supreme Court in Industrial Union v. America Petroleum, 448 U.S. 607, 100 S.Ct. 2844, 65 L.Ed.2d 1010 (1980).
Further, this court has recognized the admissibility of public documents and records in Antley v. Yamaha Motor Corp., U.S.A., 539 So.2d 696 (La.App. 3 Cir.1989), wherein the Consumer Products Safety Commission's guidelines on the hazards of All-Terrain Vehicles (ATVs) were admitted into evidence. The guidelines were used by this court to find the ATVs unreasonably dangerous per se. The admissibility of various government documents has also been discussed in numerous federal decisions. See, In Re Aircrash in Bali Indonesia, 871 F.2d 812 (9th Cir.1989), citing Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988); Ellis v. International Playtex, Inc., 745 F.2d 292 (4th Cir.1984); Muncie Aviation Corporation v. Party Doll Fleet, Inc., 519 F.2d 1178 (5th Cir.1975).
Therefore, we find that the OSHA and EPA documents are admissible under La. C.E. art. 803(8). Further, we find that the documents are trustworthy, relevant, and their probative value is not outweighed by prejudice. This assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 9
The trial court erred by failing to admit into evidence certain medical records concerning Wilson J. Cormier.
INA attempted to introduce at trial the medical records of Dr. Ron Futrell, Cormier's family doctor, which it contends were relevant to his medical condition. The records were compiled pursuant to a deposition upon written questions directed to Dr. Futrell through his custodian of records. The trial court refused to admit these records for the reason that they constituted hearsay.
The written questions propounded to the custodian of records for Dr. Futrell clearly indicated that the records were made by Dr. Futrell in his regular course of business as a provider of medical services. As such, the records are admissible under the business records exception to the hearsay rule, La.C.E. art. 803(6), which states:
"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * * * * *
(6) Records of regularly conducted business activity. In a civil case, a memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and to keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. This exception is inapplicable unless the recorded information was furnished to the business either by a person who was routinely acting for the business in reporting the information or in circumstances under which the statement would not be excluded by the hearsay rule. The term `business' as used in this Paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit. Public records and reports which are specifically excluded from the public records exception by Article 803(8)(b) shall not qualify as an exception to the hearsay rule under this Paragraph."
Under this rule, the trial court clearly erred in not allowing Dr. Futrell's medical records to be introduced into evidence.
We apply here the rule that, where the trial court has made a consequential error on the exclusion or admission *388 of evidence, the appellate court may consider the entire record before it and decide the issue on the merits de novo. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975), and the cases cited therein for this rule.
Dr. Futrell's medical records are before us in a proffer. INA contends they show Cormier suffered no shortness of breath or other symptoms of asbestos exposure. However, the records do mention Cormier's exposure to asbestos. These records do not overcome the testimony of Cormier and his expert medical witnesses as to the physical symptoms suffered by Cormier due to his exposure to asbestos.
ASSIGNMENT OF ERROR NUMBER 10
The jury manifestly erred by awarding damages for fear of cancer to each plaintiff when any such damages occurred after October 1, 1976.
INA argues that plaintiffs are barred from recovering for their fear of cancer because it arose after the 1976 amendment to LSA-R.S. 23:1032 barring tort claims against executive officers.
The testimony of the medical experts established that plaintiffs contracted asbestos-related disease prior to 1976. Thus, their causes of action for any damages resulting therefrom arose before 1976. These include prospective damages occurring after 1976, such as fear, pain and suffering, loss of wages, etc. We find no merit in this assignment of error.
ASSIGNMENT OF ERROR NUMBER 11
Any award for legal interest should run only from the initiation of the present lawsuit and not from plaintiffs' Federal Court lawsuits where INA was not a party.
The date of the first judicial demand in this state court lawsuit was December 22, 1987. Each of the claimants had previously filed separate lawsuits in federal court which named only the asbestos manufacturers as defendants.
Although the present judgment is silent as to when legal interest begins to run, defendant contends it should state that legal interest begins from the date of first judicial demand in this lawsuit in state court.
Defendant first cites Merchant v. Montgomery Ward & Company, 83 So.2d 920 (La.App. 1 Cir.1955), a slip and fall case filed first in federal court where two mistrials resulted from juries failing to reach a verdict. In a subsequent suit in state court, damages were awarded. Plaintiff answered defendant's appeal seeking interest from date of demand in the prior federal suit. The appellate court held:
"We do not accede to plaintiff's interesting and persuasive argument in this regard. Statutory interest allowed on judgments or on legal claims as a result of judgment is in the nature of statutory damages for withholding use of the money awarded from the judgment creditor; 15 Am.Jur. 577-581, Verbo `Damages', Sections 159-163, 30 Am.Jur. 23, Verbo `Interest', Section 29. Although the interest provided by Louisiana statute for tort claimants from judicial demand is a substantive right of the claimant recoverable even in the federal forum, New Amsterdam Casualty Co. v. Soileau, 5 Cir., 167 F.2d 767, 6 A.L.R.2d 128, we nevertheless hold that the interest in the present proceedings dates from judicial demand herein, not from judicial demand in the earlier federal proceedings between the same parties.
Such damages are usually not recoverable except as provided by statute, and for instance are not recoverable in Louisiana for injury due to negligence from the date of the accident, but only from date of judicial demand. While the construction urged by plaintiff is certainly logical that defendants have been on notice that the sum is due, if so found by the courts, since the `judicial demand' in the federal suit; nevertheless such interest is somewhat in the nature of a penalty, and as applied to the present facts the statute should be strictly construed, especially since the delay between the filing of the first suit and the filing of the subsequent (this present) suit in which judgment was awarded was not occasioned by action of the defendants herein; see Harrison v. Louisiana Highway *389 Commission, 202 La. 345, 11 So.2d 612, at page 615."
Defendant also cites O'Brien v. Delta Gas, Inc., 441 So.2d 802 (La.App. 4 Cir. 1983), writ den., 444 So.2d 1244 (La.1984), where plaintiff first filed suit in federal court but the action was dismissed for lack of jurisdiction. Later plaintiff filed in state court and obtained judgment. Defendant tendered into the registry of the court the amount of the judgment plus interest from date of demand in state court. Plaintiff applied for writs, contending interest should run from demand in the federal court. The appellate court held interest runs from the date suit was filed in state court, citing Merchant v. Montgomery Ward & Company, supra.
Plaintiffs argue O'Brien is distinguishable because the federal court had no jurisdiction. However, O'Brien does not mention this and cites Merchant for the rule that interest runs from the later suit in state court, and our Supreme Court denied writs.
Plaintiffs contend Merchant is a thirty-six year old decision and is not consistent with Burton v. Foret, 498 So.2d 706 (La. 1986). In Burton, two different courts of appeal in entirely unrelated lawsuits reached conflicting decisions on the question of whether interest runs from the date suit is originally filed against another joint tortfeasor or from the date the tortfeasor at issue was made a party in an amending petition. Our Supreme Court granted writs in both cases and consolidated them for hearing. The court held:
"Where defendants are solidarily liable, they are jointly and severally liable for the entire debt, which would include interest from the date on which plaintiff made judicial demand on the first of those parties. Under LSA-R.S. 13:4203, legal interest runs from the date of plaintiff's first judicial claim against all parties responsible for a single tortious occurrence. LSA-C.C.P. art. 1153."
Plaintiffs argue Burton v. Foret must be extended to apply to the present case where the first demand was in federal court and the later demand in state court. We do not agree. We follow the rulings in Merchant and O'Brien that legal interest is statutory and should be strictly construed, especially where, as here, INA was never a party to the federal lawsuit and was not responsible for the delay in filing suit in state court.
We do not interpret Burton v. Foret, supra as a decision intended by our Supreme Court to extend to the present circumstances. The court specifically cites C.C.P. art. 1153, which provides that an amendment relates back to the date of filing of the original pleading. This was part of the rationale for holding interest ran from the date of the original petition, rather than the date the defendant at issue was added in an amending petition. It is true the court also states that interest runs from the date demand is first made on any solidarily liable defendant. However, in Burton, all demands were made in state court. None had been made in federal court.
Thus, we will amend the judgment appealed to provide that interest begins to run from December 22, 1987, the date suit was filed in state court.
ASSIGNMENT OF ERROR NUMBER 12
The trial court erred in allowing each plaintiff to "stack" the limit of liability in each triggered INA policy.
INA argues that "stacking" is contrary to certain language contained in the policies, and that it was the intent of INA and Cities Service to limit INA's liability for a single claim of long-term exposure to the same general conditions in the work place and elsewhere to one occurrence. In its brief, INA cites policy language which reads "... all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence." INA states that this language provides that an individual claimant's long-term exposure to substantially the same conditions must be treated as a single occurrence, triggering only one policy limit. The policies were written for yearly terms from 1944 *390 through 1976 with coverages varying from $10,000.00 in 1944 to $50,000.00 in 1976 for each person injured.
Plaintiffs' treating physician, Dr. Gary Friedman, testified that plaintiffs sustained distinct bodily injury in each of their respective years of employment as a consequence of negligent exposure to asbestos dust. Thus, while plaintiffs' continued or repeated exposure may constitute but one occurrence under that policy, the INA grant of coverage and Dr. Friedman's testimony support the trial court's ruling that there was an accident/occurrence in each year of plaintiffs' exposure.
INA further argues that the trial court erred in relying on Ducre v. Mine Safety Appliances Co., 645 F.Supp. 708 (E.D.La.1986) and Houston v. Avondale Shipyards, Inc., 506 So.2d 149 (La.App. 4 Cir 1987), writ den., 512 So.2d 459, 460 (La.1987). The trial court, relying on Ducre and Houston, ruled that each INA policy in effect during plaintiffs' exposure to asbestos dust was obligated to respond in judgment, up to its applicable limits of liability, per plaintiff, in the proportion each such policy period bore to the number of coverage years involved, i.e., total years of exposure.
In Ducre v. Mine Safety Appliances Co., supra, multiple plaintiffs alleged that executive officers of their employer had negligently exposed them to occupational dust over a period of many years. The general liability policies in Ducre provided coverage to negligent executive officers. The Ducre policies defined occurrence to include "exposure to conditions, which result, during the policy period in bodily injury," and which included a provision that "... all damages arising out of exposure to substantially the same general conditions shall be considered as arising out of one occurrence." The Ducre court ruled that coverage is to be determined on an annual basis, such that primary policies in effect during each year a plaintiff is exposed must respond in damages, up to applicable limits of the policy, in the proportion each such policy bears to the total numbers of coverage years, i.e., years of exposure.
In Houston v. Avondale Shipyards, Inc., supra at page 150, the Fourth Circuit explains the rationale for the annual exposure rule as follows:
"Inherent in the decision to place CU at risk for each year during which plaintiff was exposed and CU had a policy in effect, is a construction of the events so that we view plaintiff's exposure as an occurrence which occurs (or reoccurs) each year of plaintiff's exposure. Arguably, plaintiff is reinjured each time he inhales silica dust. To avoid infinite liability exposure, however, the factual construction of a single injury (or reinjury) each year is adopted...."
Applying the Ducre/Houston rule and stacking the annual policies covering each respective plaintiff's exposure, there is more than sufficient coverage for each plaintiff's recovery awarded. Therefore, we find this assignment of error to be without merit.
ASSIGNMENT OF ERROR NUMBER 13
The trial court erred in holding that the injuries of each of the three plaintiffs, who were exposed to substantially the same general conditions, arose out of three separate occurrences.
INA argues that the claims of the three plaintiffs should constitute one occurrence because its policies state that all bodily injury arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence. INA thus claims that this policy language requires a finding that the failure to provide a safe work place for plaintiffs constitutes a single occurrence.
The trial court concluded that the claims of Perry, Cormier and Derouen constituted separate occurrences because the plaintiffs were exposed to different levels of asbestos at different times, under a variety of conditions, and at diverse job sites. Furthermore, plaintiffs belonged to different crafts and worked in different crews and their exposures were scattered and varied throughout the refinery. These fact findings are supported by the evidence. Perry, *391 a laborer, Cormier, a machinist, and Derouen, a carpenter, did belong to different crafts, did perform different job duties, and did work at the refinery over periods of time that may have overlapped, but were different.
The court in Ducre v. Mine Safety Appliances Co., 645 F.Supp. 708 (E.D.La. 1986), rejected the notion that similarities such as those argued by INA warrant a finding that plaintiffs' respective disease processes arose from substantially the same general condition. The Ducre court stated at 645 F.Supp. 713:
"It is inaccurate to assert that all the plaintiffs were injured by a single condition-exposure to silica dust. The conditions at Avondale's facilities giving rise to the silicosis claims were scattered and varied. The claimants were exposed to different levels of silica dust at different times, under a variety of conditions, at diverse job sites, and with different types of protection over long periods of time. Thus, it is appropriate to consider the harm visited upon each plaintiff as being a separate event, and to consider the event as occurring each year."
We find no error in the trial court's decision that plaintiffs' injuries arose out of three separate occurrences. Thus, we find this assignment of error to be without merit.

DECREE
For the reasons assigned, the jury verdict as to plaintiff, John Perry, is corrected to delete the years 1945, 1946 and 1947 from those in which executive officers were found negligent as to him. Furthermore, the judgment appealed is amended to reduce the award to each of the three plaintiffs from TWO HUNDRED EIGHTY FIVE THOUSAND AND NO/100 ($285,000.00), to ONE HUNDRED THIRTY FIVE THOUSAND AND NO/100 ($135,000.00), with interest thereon from date of judicial demand in the present case in state court. Otherwise, the judgment is affirmed.
AFFIRMED AS AMENDED.
NOTES
[*] Judge William A. Culpepper, Retired, participated in this decision as Judge Pro Tempore.
[1] The only defendant at trial in the present case was INA, as liability insurer of the executive officers, as to whom contributory negligence by the plaintiffs was available as a defense. However, in the companion case, Homer Champagne, et al v. Celotex Corporation, et al., which is before us on pretrial writs on the single issue of the applicability of pre-comparative fault principles, several manufacturers and suppliers of asbestos remain as defendants. Comparative fault by the plaintiffs may or may not be available as a defense to these manufacturers and suppliers depending on the facts. See Bell v. Jet Wheel Blast, 462 So.2d 166 (La.1985). In oral argument INA requested we give an advisory opinion on this issue. We decline. This is not an issue in the present case. Any opinion we gave would be purely advisory. We granted writs and a stay order in Champagne only until we decide the present case and the issues therein.