**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**December 20, 2005**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 04-31073

Louis Britt Guillory and Stanley Milton Gims
Plaintiffs-Appellants,

versus

PPG Industries, Inc., Et al,
Defendants,

Richard Dick Holliday, James Rock,
John Shamburger, and Terry Messenger
Defendants-Appellees.

Appeal from the United States District Court
For the Western District of Louisiana

Before HIGGINBOTHAM, WIENER, and DENNIS, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Plaintiffs-Appellants Louis Britt Guillory and Stanley Milton Gims brought various state-law claims for injuries resulting from a chemical release of toxic and hazardous materials against PPG Industries, Inc. and various officers and employees of PPG: Richard Holliday, Terry Messenger, John Shamburger, and James Rock (collectively, "the individual defendants").[1] Following removal on the basis that the individual defendants were improperly joined to defeat diversity jurisdiction, the district court granted summary

---

[1]Richard Holliday was PPG's plant manager. Terry Messenger, John Shamburger, and James Rock were PPG safety managers.

judgment, dismissing with prejudice all claims against the individual defendants, and denied Appellants' motion to remand. Because Appellants have no reasonable possibility of recovery against the individual defendants, we affirm.

**I**

This dispute centers around liability for a release of various toxic and hazardous materials at PPG's facility in Lake Charles, Louisiana. For approximately sixteen hours on April 4 and 5, 2002, various chemicals were released into the air when a rupture disk failed on the DH Still at PPG's Waste Treatment Unit. A rupture disk is a thin plate of material that is designed to break or burst at a certain pressure. The rupture disk failed at a pressure below its design rating. The precise cause of the premature rupture remains unknown.

Appellants, working on the site as contractors for Zachary Construction Company, contended that they were exposed to the chemical release and inhaled dangerous levels of toxic and hazardous materials. On April 16, 2003, Appellants brought the instant suit against PPG and the individual defendants in the 14th Judicial District Court for the Parish of Calcasieu, Louisiana.

On May 16, 2003, PPG filed a timely notice of removal on the basis of diversity jurisdiction, asserting that the individual defendants were improperly joined.[2] Over five months after

---

[2]Appellants are citizens of Louisiana; PPG is a citizen of Pennsylvania; destroying diversity, the individual defendants are also citizens of Louisiana.

- 2 -

removal, the Appellants had not moved to remand due to the presence of the individual, nondiverse defendants. On October 17, 2003, Magistrate Judge Alonzo P. Wilson noted the presence of the nondiverse defendants and indicated that he was considering entering summary judge *sua sponte* in favor of these defendants, provided that PPG could show that the Appellants had no reasonable possibility of recovery against them.

Subsequently, Appellants moved to remand the matter to Louisiana state court, and over the next ten months, the parties conducted a variety of discovery. Eventually, the magistrate judge, on August 20, 2004, recommended that claims against the individual defendants be dismissed with prejudice and that the motion to remand be denied. According to the magistrate judge, by the uncontroverted evidence, Rock, Shamburger, and Messenger had not been delegated responsibility for preventing the April 2002 chemical release and Holliday--PPG's plant manager--had not delegated responsibility for the safety issues without due care. With the individual defendants out of the case, there was complete diversity and federal jurisdiction under 28 U.S.C. § 1332.

Appellants did not file written objections to the magistrate judge's findings of fact and conclusions of law and, on September 22, 2004, the district court, Judge Trimble, accepted the recommended findings and conclusions, adding that, after "an independent review of the record," the magistrate judge's findings

and conclusions were "entirely correct."  Appellants timely filed a notice of appeal.  We have jurisdiction under 28 U.S.C. § 1291.

## II

The primary issue in this case is whether the district court erred in concluding that the individual defendants were improperly joined to defeat diversity jurisdiction.  Before turning to the merits, we first determine the proper standard of review and then determine whether the magistrate judge's improper joinder inquiry in this case comports with our recent en banc decision in *Smallwood v. Illinois Central Railroad Co.*[3]

### A

To start, the parties dispute the standard of review.  As PPG contends, when a party fails to file timely written objections to a magistrate judge's findings-of-fact and conclusions-of-law, our review is for plain error.[4]  However, when the district court engages in an independent evaluation of the record, as here,[5] the standard of review depends upon the issue on appeal.[6]

---

[3]385 F.3d 568 (5th Cir. 2004) (en banc).

[4]*See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

[5]Here, the district court stated: "Alternatively, an independent review of the record has led this court to conclude that the proposed findings and conclusions are entirely correct." Partial Final Judgment (Sept. 22, 2004), at 1.  Although this may be judicial boilerplate, we take it as indication that the district court conducted its own review of the record, sufficient to avoid *Douglass*'s plain-error review standard for unobjected-to magistrate reports.

[6]*See, e.g.*, *Meister v. Texas Adjutant General's Dept.*, 233 F.3d 332, 335 (5th Cir. 2000) (applying de novo review to all issues even though only a few were actually objected to); *Jasso v. Barnhart*, 102 Fed. Appx. 877 (5th Cir. 2004)

- 4 -

Thus, we review the district court's decision to deny Appellants' motion to remand *de novo*.[7] There are two ways to establish improper joinder: "(1) actual fraud in the pleading of jurisdictional facts, or (2) the inability of the plaintiff to establish a cause of action against the non-diverse party in state court."[8] The first--actual fraud--is not at issue in this case. With the second, we must determine "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against the in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[9]

The burden of proof is on the removing party.[10] To determine the validity of an improper joinder claim, we "must evaluate all of the factual allegations in the light most favorable to the

---

("Although the failure to object to a magistrate judge's findings and conclusions generally subjects appellate arguments to plain-error review, because the district court undertook an independent examination of the record despite the lack of objections in the instant case, the plain-error standard does not apply."); *see also Douglass*, 79 F.3d at 1429 ("[I]t is often the case, especially in *pro se* cases, that, even though objections are not filed to all of the magistrate judge's proposed findings and conclusions, the district judge engages in *de novo* review of all of the proposals, because he is not certain which ones are challenged, or on what basis. For issues, fact or law, so reviewed *de novo*, we ordinarily will not impose our new rule.").

[7] *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995).

[8] *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc).

[9] *Id.* at 573.

[10] *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981).

- 5 -

plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff."[11] In addition, we must resolve all ambiguities in the controlling state law in the plaintiff's favor.[12] We do not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but look only for a possibility that the plaintiff might do so.[13]

In reviewing a grant of summary judgment, we apply the same standards that govern the district court.[14] Summary judgment is appropriate if the court, viewing the facts in the light most favorable to the nonmoving party, determines "that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[15] The burden rests initially on the moving party to establish by competent evidence that no issue of material fact exists.[16] Only then must the nonmoving party assume the burden of showing the existence of a specific, disputed factual issue.[17]

---

[11]*Id.*

[12]*See Griggs v. State Farm Lloyds*, 181 F.3d 694, 699 (5th Cir. 1999); *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992); *B., Inc.*, 663 F.2d at 549.

[13]*Dodson*, 951 F.2d at 42-43; *B., Inc.*, 663 F.2d at 549.

[14]*See Lavespere v. Niagra Mach. & Tool Works, Inc.*, 910 F.2d 167, 177 (5th Cir. 1990).

[15]FED. R. CIV. P. 56(c).

[16]*See Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994); *Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 79 (5th Cir. 1987).

[17]*Celotex Corp. v. Catrett*, 477 U.S. 317, 321-25 (1986).

Appellants challenge the procedure followed by the magistrate judge in deciding the improper joinder issue. In *Smallwood v. Illinois Railroad Co.*, we summarized the two avenues for deciding the improper joinder issue:

> There has been some uncertainty over the proper means for predicting whether a plaintiff has a reasonable basis of recovery under state law. A court may resolve the issue in one of two ways. The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6)-type challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.[18]

Here, it is undisputed that Appellants can satisfy a Rule 12(b)(6)-type inquiry; Appellants' petition ties the actions of the individual defendants to various safety responsibilities concerning the April 2002 chemical release.[19] The magistrate judge, however, decided to pierce Appellants' pleadings, conducting a summary inquiry into whether Appellants had any reasonable basis of

---

[18]*Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc).

[19]*See, e.g.*, *Hawthorne Land Co. v. Occidental Chem. Corp.*, ___ F.3d ___, 2005 WL 3047260, at *2 (5th Cir. Nov. 15, 2005) (conducting Rule 12(b)(6)-type analysis and determining that plaintiffs' petition failed to state a claim against the instate defendants).

recovery against the individual defendants.   Appellants contend this inquiry exceeded the boundaries contemplated by *Smallwood*.

To start, we review both the magistrate judge's decision to pierce the pleadings[20] and his procedure for determining improper joinder for an abuse of discretion.[21]  We recognize, however, "that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant."[22]  In addition, *Smallwood* cautioned that "the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden."[23]

In considering whether the magistrate judge's pierce-the-pleading procedure was an abuse of discretion, the length of time necessary to determine improper joinder is a relevant

---

[20]*Id.; Badon v. RJR Nabisco Inc.*, 224 F.3d 382, 390 n.10 (5th Cir. 2000); *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995).

[21]*Smallwood*, 385 F.3d at 573-74 ("[T]he decision regarding the procedure necessary in a given case must lie with the discretion of the trial court.").

[22]*Id.* at 574.  In *Smallwood*, we provided several examples of the type of inquiry appropriate under a pierce-the-pleadings inquiry: "For example, the in-state doctor defendant did not treat the plaintiff, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that can easily be disproved if not true."  *Id.* at 574 n.12 (citing *Travis v. Irby*, 326 F.3d 644, 648-49 (5th Cir. 2003)).  Here, we consider the magistrate judge's determination to fall right in line with the examples provided in *Smallwood*, at least with respect to three of the instate defendants: Rock, Shamburger, and Messenger.  The magistrate judge determined that they had no connection to the particular DH Still from which the chemical explosion occurred, a finding that is analogous to saying the in-state doctor did not fill a prescription for the plaintiff patient.

[23]*Smallwood*, 385 F.3d at 574.

consideration.[24]  Removal deprives the plaintiff of his chosen forum, and every day litigating in federal court is a day spent not litigating in state court.  It is imperative that a motion to remand be resolved as swiftly as possible so that the plaintiff maintains his right to choose the forum in which to litigate.[25]

Here, PPG removed this case in May 2003, arguing that the individual defendants were improperly joined.  For five months, Appellants made no effort to raise this issue with the district court.  In October 2003, the magistrate judge recognized the absence of complete diversity due to the presence of the individual defendants and indicated that the joinder issue needed to be resolved.  For purposes of determining whether the magistrate judge's pierce-the-pleading inquiry was an abuse of discretion, this period of time is irrelevant.  Appellants were charged with at least some of the burden of raising the jurisdictional issue after PPG asserted improper joinder.  Appellants cannot bolster their case by delay.  Rather, the delay weighs against a finding that the procedure adopted by the magistrate judge was an abuse of discretion.  If Appellants wanted the case remanded to state court,

---

[24]*Id.* at 574 ("Attempting to proceed beyond [a] summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a *simple and quick* exposure of the chances of the claim against the in-state defendant alleged to be improperly joined." (emphasis added)).  In addition, *Smallwood* instructs that "the motive or purpose" of the joinder of instate defendants is not relevant.  *Id.*

[25]*See, e.g.*, *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (noting that the plaintiff is "the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law").

they should have promptly raised the issue. Their failure to do so cuts against their contention that the magistrate judge exceeded *Smallwood*'s boundaries by piercing the pleadings in this case.

After the magistrate judge recognized the absence of complete diversity, the parties engaged in discovery over the course of ten months before the magistrate judge resolved the improper joinder issue. While under some circumstances this may be too long, the delay here was largely of the parties' own making. On four occasions, joint or unopposed motions were granted by the magistrate judge extending time for briefing and discovery. Stated directly, that the parties proceeded at a slow pace with the pierce-the-pleading inquiry, which did little more than put of record uncontroverted facts, does not, by that single circumstance, mean that it was not a "summary procedure" under *Smallwood*.

Moreover, neither the scope or the amount of discovery allowed by the magistrate judge was an abuse of discretion.[26] As we noted in *B. Inc. v. Miller Brewing Co.*, "the defendants may submit affidavits and deposition transcripts; and in support of their motion to remand, the plaintiffs may submit affidavits and deposition transcripts along with the factual allegations contained

---

[26]*See McKee v. Kansas City Southern Ry. Co.*, 358 F.3d 329, 334 (5th Cir. 2004) (requiring district court's to take into account the "status of discovery" and to "consider what opportunity plaintiff has had to develop its claims against the non-diverse defendants"); *Travis*, 326 F.3d at 649.

- 10 -

in the verified complaint."[27]  In *Smallwood*, we cautioned that "[d]iscovery by the parties should not be allowed except on a tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity."[28]  This language sharply limits, but does not eliminate, discovery.  To do so would deny all substance to the pierce-the-pleading option that we have repeatedly sanctioned.[29]

Within the confines of the limited discovery in this case, we cannot find an abuse of discretion.  While six depositions were taken, they were confined to determining the connection of the primary players to the issues underlying this litigation.  In addition, there was limited document production, and Appellants themselves described the extent of discovery in this case as being "pretty truncated."  We reject Appellants challenge to the pierce-the-pleading procedure followed by the magistrate judge and now turn to whether Appellants had any reasonable basis of recovery against the individual defendants.

<u>C</u>

---

[27]663 F.2d 545, 549 (5th Cir. 1981); *see also Carriere v. Sears, Roebuck and Co.*, 893 F.2d 98, 100 (5th Cir. 1990) ("When determining fraudulent joinder, the district court may look to the facts established by summary judgment evidence as well as the controlling state law.  Hence, the trial court properly considered affidavits and depositions in ruling on the plaintiffs' motion to remand.").

[28]*Smallwood*, 385 F.3d at 574.

[29]*See, e.g., id.* at 573; *Travis*, 326 F.3d at 648-49; *Carriere*, 893 F.2d at 100; *Griggs*, 181 F.3d at 699-702.

Appellants advanced two theories of recovery against the individual defendants. First, as officers and employees of PPG, the individual defendants breached a duty, established by Louisiana law, to protect Appellants that was not delegated with due care to others. Second, Appellants argue that PPG and the individual defendants were engaged in inherently dangerous activities for which Louisiana law precludes any delegation of safety responsibilities. We address each in turn.

1

Appellants contend that the individual defendants are responsible for injuries caused by the April 2002 chemical release because they are corporate officers, imbued with safety responsibilities under Louisiana law. The magistrate judge found uncontroverted evidence that Rock, Shamburger, and Messenger had not been delegated responsibility to enact measures that would have prevented the April 2002 release. Moreover, the magistrate judge found that Holliday--PPG's plant manager--had delegated his general responsibility for safety issues to other subordinates, that there was no evidence that Holliday delegated his responsibility without due care, and that there was no evidence that he knew or should have known that the delegated officials were not performing their duties. Thus, the magistrate judge concluded that Appellants had no reasonable possibility of recovery against the instate defendants. We agree.

Under Louisiana law, a corporate officer or employee may, under certain circumstances, be held individually liable for injuries to third persons.[30] The liability may be imposed on such individuals even if the duty breached arises solely from the employment relationship.[31] In *Canter v. Koehring Co.*, the Louisiana Supreme Court established four criteria for imposing liability upon a supervisor: first, PPG must owe a duty of care to the Plaintiffs, breach of which causes the damage for which recovery is sought; second, PPG's duty must have been delegated to the nondiverse defendants; and third, the nondiverse defendants must have breached the delegated duty through "personal (as contrasted with technical or vicarious) fault."[32] Finally, *Canter* offers a defense: "[P]ersonal liability cannot be imposed upon the officer, agent, or employee simply because of his general administrative responsibility for performance of some function of the employment."[33]

Appellants argue, first, that the affidavit submitted by Dr. Paul Templet, Appellants' expert witness, establishes that the individual defendants held positions in which they were responsible for workplace safety, had the power to remedy dangerous conditions

---

[30]*See Canter v. Koehring Co.*, 283 So.2d 716, 722 n.7 (La. 1973).

[31]*Ford v. Elsbury*, 32 F.3d 931, 936 (5th Cir. 1994).

[32]*Canter*, 283 So.2d at 721.

[33]*Id.*

at PPG, and had actual knowledge of the prior accidents occurring at PPG's facility. Appellants reading of Templet's affidavit goes too far. Templet states that it "seems logical" that Rock and Shamburger, as director and manager, respectively, of the Environment, Health, and Safety division at PPG, should have known whether, in order to prevent additional chemical release, steps were taken after prior incidents. A review of the uncontroverted deposition testimony provides, however, no basis for concluding that either individual had any knowledge of whether any steps were taken. In addition, Templet's own affidavit, after offering his prediction, recognized that the uncontroverted deposition testimony of Rock, Shamburger, and Messenger established that they did not know whether steps were taken to prevent further chemical releases.

Second, Appellants argue that the magistrate judge erred in concluding that the individual defendants had not been delegated the responsibility for their safety. Again, the uncontroverted testimony indicates that neither Rock, Shamburger, or Messenger had any safety responsibility with respect to the particular DH Still from which the chemical release occurred.[34] Moreover, there is no

---

[34]The following passage from the deposition of Richard Holliday is illustrative:

> Q. Would Mr. Rock have had responsibility for insuring that adequate monitoring devices were in place at the DH still during this time frame?
> A. No, that would not fall in his responsibility but in the responsibility of the unit.
> Q. Okay. Would Mr. John Shamburger have had any responsibility for insuring that adequate monitoring devices were in place at that time?

evidence that Holliday failed to delegate responsibility with due care.[35]

Finally, Appellants rely heavily upon this Court's decision in *Ford v. Elsbury*, in which we reversed a finding of improper joinder and ordered the matter remanded to the state court.[36] In *Ford*, litigation resulted from an explosion at a fertilizer plant. As here, the suit was against the plant and its manager, a nondiverse defendant. After removal, plaintiffs filed a motion to remand; following limited discovery, the district court denied plaintiffs' motion, finding the nondiverse defendant improperly joined. We reversed, finding that affidavits submitted by the plaintiffs contradicted the defendants' bare allegation that the nondiverse defendant had not been delegated responsibility for safety measures.

As here, the district court relied upon the self-serving testimony of the nondiverse defendant that he had no responsibility

---

A.   No, that would not fall in his responsibility either.
Q.   What about Terry Messenger?
A.   No, not -- not him, either.
Q.   Okay.

Deposition of Richard Holliday, at 30. Appellants presented no evidence that contradicted the testimony given by Holliday in his deposition.

[35]Appellants submitted several documents with their motion to remand. None of the documents mention Rock, Shamburger, or Messenger by name, or give any indication that these three individual defendants had any connection to the particular chemical release in April 2002. Holliday's name appears on several documents reporting the incident to the Louisiana Department of Environmental Quality, Surveillance Division; however, as discussed above, Appellants presented no evidence that Holliday delegated his safety responsibilities without due care.

[36]32 F.3d 931 (5th Cir. 1994).

- 15 -

for safety measures relating to the particular plant explosion. However, unlike Appellants, the plaintiffs in *Ford* came forward with affidavits contradicting the testimony of the nondiverse defendant. Here, nothing in the record contradicts the testimony of the individual defendants. We are persuaded that the magistrate judge, relying upon undisputed facts, correctly determined that the individual defendants were improperly joined and should be disregarded in determining whether there is complete diversity of citizenship.

2

Next, Appellants contend that PPG's operation of a chemical manufacturing plant is an inherently dangerous activity that, under Louisiana law, may not be delegated. As this theory of recovery was not raised below, we decline to consider it.[37]

**III**

As there was never a reasonable possibility of recovery against the named individual defendants, we affirm.

---

[37]*See In re McCloy*, 296 F.3d 370, 376 (5th Cir. 2002) ("We do not reach issues not raised before the district court."). Here, there is no discussion of this alternative theory in Appellants' petition or the magistrate judge's report and recommendation.