# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 5, 2011

No. 10-31132

Lyle W. Cayce
Clerk

RONA YOUNG KEMP, on behalf of Martin Young; ROXANN YOUNG, on behalf of Martin Young; CARL YOUNG, on behalf of Martin Young,

Plaintiffs–Appellants

v.

CTL DISTRIBUTION, INCORPORATED; ROGER A. MCLELLAND,

Defendants–Appellees

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:09-CV-1109

Before DAVIS, PRADO, and OWEN, Circuit Judges.

PER CURIAM:[*]

This case arises from a wrongful death action that has bounced several times between state and federal court. At issue is whether the district court erred in denying Plaintiffs' motion to remand after (1) finding that the sole non-diverse defendant was improperly joined, and (2) applying equitable tolling to excuse the one-year limitation on removals, found in the second paragraph of 28 U.S.C. § 1446(b). Because the district court did not err in finding that the non-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-31132

diverse defendant was improperly joined, and because we find the one-year limitation on removals inapplicable here, we affirm the district court's denial of Plaintiffs' motion to remand the case to state court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Martin Young was employed by truck maintenance company Delta Trailer, Inc. and worked in Delta's garage, which is located in a truck terminal owned and operated by CTL Distribution, Inc. ("CTL"). Young died after he was allegedly exposed to toxic fumes from chemical material left in a trailer. Martin Young's three children, Rona Young Kemp, Roxann Young, and Carl Young, filed a wrongful death suit on his behalf in Louisiana state court on November 3, 2006. Two of the plaintiffs were citizens of Texas and one was a citizen of Louisiana. The original defendants were CTL, a Delaware corporation with its principal place of business in Florida; Roger McLelland, a Louisiana citizen and manager of the CTL terminal where Martin Young died; and a John Doe defendant, who Plaintiffs believed was a Louisiana citizen.

On November 28, 2006, CTL removed this case to the United States District Court for the Middle District of Louisiana. CTL alleged that removal was proper because McLelland was fraudulently joined and the John Doe defendant should not be considered for diversity purposes. On December 28, 2006, the district court granted Plaintiffs' Motion for Leave to File a "First Amended, Supplemental, and Restated Complaint." In the First Amended Complaint, Plaintiffs substituted Trinity Insurance Services ("Trinity") for the John Doe defendant, and alleged that Trinity, hired by CTL to perform the accident investigation, intentionally or negligently spoliated evidence in the incident police file. Trinity is a Louisiana corporation. Plaintiffs also added claims against two other CTL employees, Jimmy Davis and Kelvin Perry, both Louisiana citizens. They alleged that Perry and Davis negligently maintained equipment that failed when they attempted to resuscitate Martin Young. The

2

No. 10-31132

district court found that the First Amended Complaint stated a claim for spoliation of evidence against Trinity, and that Plaintiffs' addition of Trinity was due to new information and not an attempt at forum manipulation by destroying diversity. On June 7, 2007, the court remanded the suit to state court based on Trinity's addition as a defendant, which destroyed diversity. At the time of the remand, the court did not address the viability of the claims against Perry, Davis, or McLelland.

The case proceeded in state court until that court granted Plaintiffs' Motion to File a "Second Amended, Supplemental, and Restated Petition" on December 9, 2009, over three years after the initial pleading was filed. The Second Amended Petition named only CTL and McLelland as defendants (together, "Appellees"). CTL again removed the suit to federal court on December 30, 2009, and Plaintiffs once again moved to remand. Plaintiffs argued, *inter alia*, that (1) the case had already substantially progressed in state court; (2) the motion to remand occurred more than three years after the original complaint was filed and was thus barred under the one-year removal limitation in the second paragraph of 28 U.S.C. § 1446(b); (3) the equitable-tolling exception to the one-year removal limitation announced in *Tedford v. Warner-Lambert Co.*, 327 F.3d 423 (5th Cir. 2003), should not apply here; and (4) valid claims remained against the non-diverse defendant, McLelland, and therefore there was no diversity jurisdiction.

The magistrate judge hearing the remand motion concluded that McLelland was improperly joined, finding that "CTL has met its burden of establishing that the court has diversity jurisdiction and that removal was proper based on the allegations in [Plaintiffs'] Second Amended Petition." Additionally, the magistrate judge found that the *Tedford* equitable exception to the one-year limit on removals was applicable to CTL's removal because (1) Plaintiffs had engaged in forum manipulation by improperly joining non-diverse

3

No. 10-31132

defendants, and (2) it did "not appear that much actual progress had been made toward the ultimate resolution of the case" in state court.  On June 24, 2010, the district court adopted the magistrate judge's report and recommendation and denied Plaintiffs' motion to remand.  On September 30, the district court certified the June order for interlocutory appeal under 28 U.S.C. § 1292(b) and amended it to include the following statement:

> In the opinion of the court, this order involves a controlling question of law (whether equitable tolling should apply to allow removal more than three years after initial filing of the suit) as to which there is a substantial ground for difference of opinion, and an immediate appeal from the order may materially advance the ultimate termination of the litigation.

The revised order also stayed further proceedings in the district court pending the interlocutory appeal.  We granted Plaintiffs leave to appeal from the interlocutory order.

## II. STANDARD OF REVIEW

We review certified orders de novo.  *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 397 (5th Cir. 2010) (en banc).  Similarly, we review both a district court's determination that a party is improperly joined and its denial of a motion to remand de novo.  *Kling Realty Co., Inc. v. Chevron USA, Inc.*, 575 F.3d 510, 513 (5th Cir. 2009).

## III. DISCUSSION

Appellants argue that we may review not only the question certified by the district court itself, but also the merits of its equitable tolling decision and finding of improper joinder.  They contend that McClelland was not improperly joined, because they stated valid executive-officer negligence and spoliation-of-evidence claims against him.  Further, they argue that the district court erred by equitably tolling the one-year limit on removals because it failed to consider all three factors necessary for *Tedford* tolling and incorrectly balanced the

4

No. 10-31132

equities.  Based on these alleged errors, Plaintiffs ask us to reverse the district court's denial of their motion to remand the case to state court.

## A.    Scope of Review

As an initial matter, Appellees argue that we may only consider the question certified for appeal by the district court: Whether equitable tolling should apply to allow tolling more than three years after the suit's initial filing. Without citing any authority for this proposition, Appellees contend that we may not address the merits of the district court's equitable tolling decision or its finding of improper joinder.

In a recent en banc decision, we held that "[u]nder § 1292(b), it is the order, not the question, that is appealable." *Castellanos-Contreras*, 622 F.3d at 398 (citing *Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199, 205 (1996)).  Our jurisdiction over interlocutory appeals is, however, limited to "questions that are material to the lower court's certified order."  *Id.* (quoting *Adkinson v. Int'l Harvester Co.*, 975 F.2d 208, 212 n.4 (5th Cir. 1992)) (internal quotation marks omitted).  Second, even if we determine that we have the power to consider a question that is material to the certified order, we must nonetheless decide whether to exercise our discretion to consider those issues.  *Id.* at 399.

Applying this standard, we find that the question of whether McLelland was improperly joined is material to the district court's denial of Plaintiffs' motion to remand.  If the district court erred in finding that McLelland was improperly joined, as decided in the certified order, then neither we nor the district court have subject-matter jurisdiction over the case because McLelland is a citizen of Louisiana, where the suit was brought.  *See* 28 U.S.C. § 1441(b) (specifying that non-federal question suits are removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought").  We must therefore address this issue

5

before considering any others, even though neither party raises it as a jurisdictional question.

Additionally, were it necessary to decide, the district court's decision to grant equitable tolling would be material to its denial of Plaintiffs' motion to remand. If § 1446(b)'s one-year limitation applied, an error in the district court's decision to allow equitable tolling would require reversing the denial of the remand order. As we explain below, however, we need not actually address the equitable tolling issue here because of the inapplicability of § 1446(b)'s one-year limitation.

Therefore, we decline Appellee's suggestion that we must limit our inquiry solely to the issue of whether equitable tolling should apply to allow removal more than three years after initial filing of the suit.

## B.    Improper Joinder

Appellants argue that the district court erred in finding that they had improperly joined McLelland because their executive-officer negligence and spoliation-of-evidence claims against McLelland were both valid. They contend that McLelland owed Martin Young a personal duty of care that McLelland breached, causing Young's injury, and thus they have stated a claim under the executive-officer liability doctrine explained in *Canter v. Koehring Co.*, 283 So. 2d 716 (La. 1973), *superceded by statute on other grounds by* LA. REV. STAT. § 23:1032. Further, they assert that McLelland's position as terminal manager required him to maintain the missing documents, and that they could possibly prevail on a claim that he was negligent in failing to do so, or alternatively, that he intentionally spoliated the documents.

Improper joinder is a narrow exception to the rule of complete diversity. *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005). To establish improper joinder, the removing party bears the burden of showing the plaintiff's inability to "establish a cause of action against the non-diverse party in state

court." *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005). To do so, the removing party must demonstrate either : "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (citing *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)). Only the second method is at issue here.

Using this second method of establishing improper joinder, the test is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* The district court "may conduct a Rule 12(b)(6)-type analysis" to decide whether the plaintiff has a reasonable basis for recovery under state law. *Id.* The court may also "pierce the pleadings" in the cases in which the "plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder." *Id.* In these cases, the court may conduct a summary inquiry, but "only to identify the presence of discrete and undisputed facts that would preclude the plaintiff's recovery against the in-state defendant." *Id.* at 573–74. The en banc Court in *Smallwood* cautioned that this is a "simple and quick" inquiry, and that the "motive or purpose of the joinder of in-state defendants is not relevant." *Id.* at 574. Here, the district court pierced the pleadings and examined items submitted by Plaintiffs with their motion to remand to determine, among other things, evidence of the existence of a personal duty owed by McLelland to Young. Because Plaintiffs do not object to the district court's decision to pierce the pleadings, we too conduct a summary inquiry of the relevant record evidence.

### 1.    Executive-Officer Liability for Negligence

The parties disagree over the application of Louisiana's executive-officer liability doctrine to this case. Under Louisiana law, a court may hold a corporate

No. 10-31132

officer or employee individually liable for injuries to third persons under certain circumstances.[1] *Canter*, 283 So. 2d at 721–22. This "liability may be imposed on such individuals even if the duty breached arises solely from the employment relationship." *Guillory*, 434 F.3d at 312 (citing *Ford v. Elsbury*, 32 F.3d 931, 936 (5th Cir. 1994)). Referred to as "*Canter* liability," after the Louisiana Supreme Court decision in which it was established, Plaintiffs must prove the following elements in order to recover: (1) CTL owed a duty of care to Martin Young, the breach of which caused the damages for which recovery is sought; (2) CTL delegated its duty to McLelland; and (3) McLelland breached the delegated duty through "personal (as contrasted with technical or vicarious) fault"; but (4) "personal liability cannot be imposed upon [McLelland] simply because of his general administrative responsibility for performance of some function of the employment." *Canter*, 283 So. 2d at 721; *see also Guillory*, 434 F.3d at 312.

The magistrate judge's order, adopted by the district court, found that Plaintiffs would be unable to succeed on this claim because their complaint, along with certain summary evidence, failed to show that McLelland owed a personal duty to Martin Young. It found that the duties alleged were nothing more than those imposed because of general administrative responsibilities and not owed personally to Young. Additionally, it found that the record evidence supported this lack of a personal duty because it did not show that McLelland had any knowledge of a dangerous condition that might harm Young.

Plaintiffs maintain that the magistrate judge's order failed to properly analyze personal duty. They argue that McLelland's negligence arose from

---

[1] Louisiana's workers' compensation law was amended in 1976 to prevent suits by company employees against executive officers for work-related injuries, except for intentional tort claims. *See* LA. REV. STAT. § 23:1032. In cases where the suit is brought by a non-employee third-party, as here, executive-officer liability for negligence has not been abrogated. *See In re 1994 Exxon Chemical Fire*, 558 F.3d 378, 386 (5th Cir. 2009) ("*Canter's* four-part test is used to determine whether an employee is individually liable to third persons, even if they are not co-employees.") (citations omitted).

No. 10-31132

"activities within the course and scope of his duties as terminal manager." Specifically, they identify a passage from a CTL driver-orientation manual, which notes that management personnel (1) are directly responsible for the instruction of all employees in proper safety procedures; (2) must immediately correct hazardous conditions in the workplace; and (3) must provide full support for all safety procedures and training. Further, they note that McLelland knew Martin Young well, and used to walk through the work bay correcting unsafe practices multiple times a day. Therefore, they argue, McLelland's general duties as a manager were also personally owed to Young, and McLelland breached those duties. We disagree.

In *Ford v. Elsbury*, we considered whether the plant manager of a factory where the plaintiffs were injured by an explosion was fraudulently joined, or whether the plaintiffs had shown a possibility of prevailing against him on their *Canter* liability claim. 32 F.3d at 935. In that case, we noted that a key issue in deciding whether there was a possibility of the plant manager's personal liability was whether the plant manager "was aware or should have been aware of a risk of harm and nevertheless failed to respond to the risk in the manner in which a reasonably prudent plant manager would respond in the same or similar circumstances." *Id.* at 936. We further explained that "[a] supervisor's knowledge of the dangers present 'could give rise to the personal duty contemplated in *Canter*.'" *Id.* (quoting *Hayden v. Phillips Petroleum Co.*, 788 F. Supp. 285, 287 (E.D. La. 1992)). Viewing the record, we cited to several affidavits and deposition testimony that indicated it was likely that the plant manager knew of the dangerous condition. *See id.* at 939. On this basis, we reversed the district court's determination of fraudulent joinder. *Id.*

Unlike in *Ford*, Plaintiffs have not pleaded that McLelland had any knowledge of the presence of toxic chemicals in the trailer in which Martin Young fell, nor is there evidence that McLelland should have known about such

9

a condition.  While the complaint alleges that both CTL and McLelland failed to "ensure the Delta Trailer, Inc. garage around and in which Martin Young worked prevented his exposure to harmful emissions, although such technology was available and known to" CTL and McLelland, it does not allege that CTL delegated such responsibility specifically to McLelland.   Without either knowledge of the dangerous condition, or the possibility that he was specifically delegated responsibility of inspecting the trailers for CTL on a daily basis, Plaintiffs cannot show the existence of a personal duty that was breached here. *See, e.g.*, *Hoerner v. ANCO Insulations, Inc.*, 812 So. 2d 45, 63–64 (La. App. Ct. 2002) (noting that the proper test to determine whether an executive officer had a personal duty to the plaintiff is "whether the executive officer in question had some direct duty to provide [the plaintiff] a safe place to work").

Further, the Louisiana Supreme Court has explained that in order for personal liability to attach under *Canter*, "that person must have some personal contact with and responsibility towards the injured employee."  *Esco v. Smith*, 468 So. 2d 1169, 1175 (La. 1985).  Although Plaintiffs failed to allege any such personal contact in their complaint, McLelland's deposition does indicate that he did have contact with Young on a daily basis. Young was not, however, an employee of CTL.  This distinguishes Young from the plaintiffs in many of the Louisiana cases that Plaintiffs cite for the proposition that a manager's "personal duty and liability can fall within the course and scope of the manager's duties."  *See Lytell v. Hushfield*, 408 So. 2d 1344, 1347–48 & n.8 (La. 1982) (noting the employer's "duty to provide its employees with a reasonably safe place to work" under LA. REV. STAT. § 23:13); *Pisciotta v. Allstate Ins. Co.*, 385 So. 2d 1176, 1185 & n.1 (La. 1979) (on rehearing) (same);  *Cole v. Celotex Corp.*, 588 So. 2d 376, 382 (La. Ct. App. 1991), *aff'd*, 599 So. 2d 1058 (La. 1992) (same).

Thus, to the extent that McLelland was delegated certain safety responsibility for CTL employees, per the driver-orientation manual, these were not necessarily the same duties he owed to Young, a non-employee.

In the end, Plaintiffs have merely alleged that McLelland had general safety responsibilities. They have not alleged facts or identified evidence that create a possibility that McLelland owed a personal duty to Young to ensure that the trailer he worked on was toxin-free. Because the pleadings and summary-inquiry evidence do not create the possibility that McLelland owed a "personal duty" to Young with regard to the trailer, Defendants have shown that Plaintiffs have no possibility of prevailing on this claim against McLelland.

## 2.     Spoliation of Evidence

Plaintiffs also allege both negligent and intentional spoliation of evidence claims against McLelland. The complaint contends that (1) federal regulations and industry standards mandate that CTL maintain certain records, including pre-trip and post-trip inspection reports for trucks and trailers, truck driver logs, and work orders for Martin Young; and (2) Plaintiffs have requested these records, but "CTL has failed to produce them leading to the inevitable conclusion that CTL had them destroyed." It further states that McLelland was delegated responsibility "to retain many of these records," identifying a line in CTL's "Log Auditing Policy" noting that "[t]erminal managers will need to set-up files for Tractor [Vehicle Inspection Reports] and trailer [Vehicle Inspection Reports]. These files must be maintained on all equipment housed at your terminal." Plaintiffs thus claim that they have shown a possibility of prevailing because (1) McLelland had responsibility for some of the documents; (2) McLelland knew of the possibility of a lawsuit and had the motivation and opportunity to dispose of the documents; and (3) therefore, that Plaintiffs are entitled to an evidentiary adverse presumption against McLelland.

No. 10-31132

Addressing only the negligent spoliation claim, the district court ruled that Plaintiffs could not show a possibility of prevailing against McLelland on this claim because, again, they had not shown that he owed a personal duty to Martin Young to maintain documents. We have previously held, however, that "[t]he Louisiana tort of spoliation of evidence provides a cause of action for an intentional destruction of evidence carried out for the purpose of depriving an opposing party of its use." *Burge v. St. Tammany Parish*, 336 F.3d 363, 374 (5th Cir. 2003) (citing *Pham v. Contico Int'l, Inc.*, 759 So. 2d 880 (La. Ct. App. 2000)). We further explicitly rejected the argument that spoliation of evidence "may also be based on the negligent destruction of evidence." *Id.* at 374 n.5. Therefore, Plaintiffs cannot prevail on their negligent spoliation claim against McLelland as a matter of law.

Turning to their intentional spoliation claim against McLelland, Plaintiffs allege only the following in their complaint: "To the extent[ ] Mr. McLelland was delegated the duty to maintain the records and failed to so, Mr. McLelland is guilty of intentional spoliation of evidence and CTL is vicariously liable for his acts." This fails to even plead the necessary elements of the tort under Louisiana law, namely, that (1) McLelland intentionally destroyed documents, and (2) that he did so with the purpose of depriving Plaintiffs of their use. *See Burge,* 336 F.3d at 374. Moreover, along with their assertion that he had the duty to maintain "certain documents," Plaintiffs' statement that McLelland "is guilty of the tort intentional spoliation" is the entirety of their claim against McLelland; they fail to plead any facts with this claim. This means that they do not state a claim that "is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), because to do so "'the plaintiff [must plead] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

No. 10-31132

1949 (2009)). Because Plaintiffs fail to properly state a claim against McLelland for intentional spoliation, they have no possibility of prevailing against McLelland.

Therefore, because Plaintiffs have no possibility of prevailing on either claim against McLelland, the district court did not err in finding that McLelland was improperly joined to defeat federal jurisdiction.

## C.    Timing of Removal

Appellants argue that, even if McLelland was improperly joined, the district court erred by equitably tolling the one-year limitation for removal for cases not initially removable. They contend that the district court improperly applied the three-prong equities test found in *Tedford* by failing to consider the defendants' conduct or that the case had substantially progressed in state court over several years, and by finding that Plaintiffs had engaged in forum manipulation. Defendants contend that the district court correctly applied equitable tolling to this case. We need not address this issue, however, because we find that the one-year removal period stated in the second paragraph of 28 U.S.C. § 1446(b) is inapplicable because this case was removable on this initial pleading.

28 U.S.C. § 1446(b) states:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be

ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

In *New York Life Insurance Co. v. Deshotel*, 142 F.3d 873 (5th Cir. 1998), we considered "whether the one-year limitation for removal of diversity cases under Section 1446(b) applies only to those state court cases that are not initially removable, or to all diversity cases that a defendant seeks to remove." *Id.* at 885. We found that read as a whole, "[s]ection 1446 requires that we interpret the one-year limitation on diversity removals as applying only to the second paragraph of that section, *i.e.*, only to cases that are not initially removable." *Id.* at 886. Therefore, where a case is "removable upon its initial pleading, the [defendants'] ultimate removal of [a] case is not governed by the second paragraph of § 1446(b) or its one-year limitation." *Johnson v. Heublein Inc.*, 227 F.3d 236, 241 (5th Cir. 2000).

Applying this principle to the present case, the one-year limitation does not apply because the case was removable based on its initial pleading. In Plaintiffs' original complaint, the defendants were as follows: (1) CTL, a Delaware corporation with its principal place of business in Florida; (2) McLelland, a Louisiana citizen; and (3) "John Doe," a Louisiana citizen. Because Plaintiffs are citizens of Louisiana and Texas, the presence of McLelland and the "John Doe" defendant initially appear to destroy complete diversity and make the case nonremovable. Despite this appearance, 28 U.S.C. § 1441(a) instructs that "[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded." Further, our opinion affirms the district court's finding that McLelland was improperly joined and therefore would not destroy complete diversity. *See, e.g.*, *Curry v. State Farm Mut. Auto. Ins. Co.*, 599 F. Supp. 2d 734, 739–40 (S.D. Miss. 2009) (finding that because the defendant who would have destroyed diversity was improperly joined, the case

was initially removable and the one-year limitation did not apply).  Thus, with "John Doe" and McLelland out of the picture, and because there has been no dispute that the amount in controversy is more than $75,000, the case was removable on the initial pleading based on complete diversity.

Further, despite the parties' failure to address this issue, CTL complied with the first paragraph of § 1446(a) and preserved error by initially removing the case within thirty days and arguing that both McLelland and "John Doe" were improperly joined.  The case was only remanded after the district court allowed Plaintiffs to amend their pleading the first time and add several additional non-diverse defendants.  Because CTL preserved error by removing the initial case within thirty days and arguing improper joinder, the parties' mutual failure to address this argument in their briefing need not preclude us from reaching the issue.

Therefore, we agree with the district court's decision to deny the motion to remand, albeit on grounds that CTL's removal is not time-barred.

## IV. CONCLUSION

Because the district court did not err in finding that McLelland was improperly joined, and because we find CTL's removal timely, we affirm the district court's denial of Plaintiffs' motion to remand.

AFFIRMED.