# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-50256

United States Court of Appeals
Fifth Circuit

**FILED**

February 11, 2015

Lyle W. Cayce
Clerk

OWEN M. SMITH; DANA NORWOOD SMITH,

Plaintiffs–Appellants

v.

BANK OF AMERICA CORPORATION; BARRETT DAFFIN FRAPPIER
TURNER & ENGEL, L.L.P.; STEPHEN C. PORTER; G. TOMMY BASTIAN;
NDEX TITLE SERVICES, L.L.C.; BANK OF AMERICA, N.A.; FEDERAL
NATIONAL MORTGAGE ASSOCIATION; THE REGISTERED HOLDERS
OF FANNIE MAE GUARANTEED REMIC PASS-THROUGH
CERTIFICATES; Fannie Mae REMIC TRUST 2008-16; FNMA AA
MSTR/SUB CW BANK; LAURIE MEDER; FANNIE MAE REMIC TRUST
2008-16,

Defendants–Appellees

Appeal from the United States District Court
for the Western District of Texas
U.S.D.C. No. 1:13-CV-193

Before DENNIS, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Plaintiffs–Appellants Owen and Dana Smith filed suit pro se in Texas
state court against Bank of America Corporation, the law firm Barrett Daffin
Frappier Turner & Engel, L.L.P. ("BDFTE"), and several other parties involved

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 14-50256

in proceedings to foreclose on the Smiths' home in Austin. The Smiths asserted a state-law claim for wrongful foreclosure. Bank of America removed the case to federal court, invoking both federal question and diversity jurisdiction. The district court never assessed subject-matter jurisdiction, and we decline to determine on this record whether the defendants successfully bore their burden to invoke federal jurisdiction at the time of removal. Accordingly, we vacate the district court's judgment and remand the case with instructions to decide the threshold jurisdictional issue.

## I. BACKGROUND

By a general warranty deed, the Smiths became the record owners of a parcel of land located at 3 Waterfall Drive, Austin, Texas 78738. In January 2008, the Smiths executed a Texas Home Equity Note ("the Note") and Texas Home Equity Security Instrument ("the Deed of Trust") with Countrywide Bank, FSB. The Note was signed by Laurie Meder, Senior Vice President of Countrywide, apparently in the form of a stamp. The Deed of Trust listed Countrywide as the "lender," Tommy Bastian as "trustee," and Mortgage Electronic Registration Systems, Inc. ("MERS") as "a nominee for Lender and Lender's successors and assigns" and as "the beneficiary under this Security Instrument." The Deed of Trust also provided that "MERS (as nominee for Lender and Lender's successors and assigns) has the right . . . to exercise any or all of th[e] interests [granted in the Deed of Trust], including, but not limited to, the right to foreclose and sell the Property[] and to take any action required of Lender."

In June 2009, MERS, "as nominee for Lender and Lender's successors and assigns"—now Bank of America, due to a merger with Countrywide— assigned the Note and Deed of Trust to BAC Home Loans Servicing, L.P. ("BAC"), formerly known as Countrywide Home Loans Servicing, L.P. Bank of

No. 14-50256

America is the successor by merger to BAC. BDFTE prepared the assignment, and Stephen C. Porter, Assistant Secretary of MERS, signed it on behalf of MERS. A stamp on the assignment requested that the document be returned to BDFTE "Attn: NDEX Title Services, L.L.C." The assignment, which is at the heart of the Smiths' claims, was filed and recorded in the Travis County Clerk's Office in July 2009.

The Smiths defaulted, and Bank of America initiated non-judicial foreclosure proceedings. On February 1, 2013, the Smiths, proceeding pro se, filed suit in the 345th Judicial District Court of Travis County against Bank of America, MERS, BAC, BDFTE, NDEX, Porter, and Bastian. Although the Smiths challenged Bank of America's authority to foreclose on a number of different grounds, including fraud, loss of perfection of the security instrument, and conflicts of interest between BAC, MERS, BDFTE, Bastian, and Porter, the precise nature of the Smiths' claims was unclear. At a minimum, they asserted a state-law claim for wrongful foreclosure. They sought money damages and an injunction to halt the sale of their property.

Bank of America and MERS timely removed the case to federal court, invoking federal question and diversity jurisdiction, alternatively. They averred that the Smiths' wrongful-foreclosure claim was preempted by the federal Home Owners' Loan Act, and that a single reference to the federal Fair Debt Collection Practices Act in the "facts" section of the Smiths' complaint stated a claim arising under federal law. In the alternative, they maintained that the non-diverse defendants BDFTE, NDEX, Bastian, and Porter did not need to consent to removal because they had been improperly joined. The Smiths did not move to remand the case to state court. Neither the district court nor the magistrate—to whom all subsequent dispositive motions were

3

No. 14-50256

referred—assessed the notice of removal or determined the basis of federal jurisdiction.

The defendants moved in succession to dismiss the claims against them under Federal Rule of Civil Procedure 12(b)(6). The district court adopted the magistrate's recommendations over the Smiths' objections and granted each motion to dismiss.[1] The district court entered final judgment, and the Smiths timely appealed.

## II. DISCUSSION

We review questions of subject-matter jurisdiction de novo. *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007). We may consider federal subject-matter jurisdiction sua sponte, as "subject-matter delineations must be policed by the courts on their own initiative even at the highest level," *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).

"Under 28 U.S.C. § 1441(a), any state court civil action over which the federal courts would have original jurisdiction may be removed from state to

---

[1] On September 2, 2013, after the district court dismissed the Smiths' claims against BDFTE, Porter, and Bastian, the Smiths, now represented by counsel, filed an amended complaint.

The amended complaint named as defendants Bank of America; the Federal National Mortgage Association ("Fannie Mae"); the Registered Holders of the Fannie Mae REMIC Pass-Through Trust Certificates, Fannie Mae REMIC Trust 2008-16 ("the Trust"); FNMA AA MSTR/SUB CW BANK; NDEX; and Meder, former Senior Vice President of Countrywide. The amended complaint asserted three causes of action: a declaratory judgment under the Texas Declaratory Judgment Act that "the 'assignment of Note and Deed of [T]rust' is void as it was executed, made, used and presented without authority or capacity"; the presentation and use of fraudulently created documents to make a claim on real property in violation of section 12.002 of the Texas Civil Practice and Remedies Code (TCPRC); and a suit to quiet title.

The Smiths initially failed to serve Fannie Mae, the Trust, FNMA, and Meder. On January 3, 2014, the magistrate ordered the Smiths to show cause why the claims against each of these defendants should not be dismissed for failure to timely effectuate service. Upon the Smiths' request, summons issued to each of the previously unserved defendants on January 6, 2014. However, the Smiths never presented any evidence of service, and the magistrate recommended that the claims against these defendants be dismissed without prejudice. The district court adopted this recommendation over the Smiths' objections.

federal court." *Gasch*, 491 F.3d at 281. The removing party bears the burden of establishing both the existence of federal subject-matter jurisdiction and the propriety of removal. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). To make the jurisdictional determination, "we consider the claims in the state court petition as they existed *at the time of removal.*" *Id.* (emphasis added). Significantly, "[a]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Id.*

Here, Bank of America and MERS claimed two alternative grounds for federal subject-matter jurisdiction: federal question jurisdiction and diversity jurisdiction.[2]

## A.    Federal Question Jurisdiction

Federal question jurisdiction extends to cases "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. To ascertain whether a case "arises under" federal law, "we look to whether the 'plaintiff's well-pleaded complaint raises issues of federal law.'" *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (quoting *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 163 (1997)). This rule is equally applicable to cases removed to federal court and to cases filed in federal court in the first instance: "[T]he plaintiff's well-pleaded complaint, not the removal petition, must establish that the case arises under federal law." *Id.* at 916 n.12 (quoting *Willy v. Coastal Corp.*, 855 F.2d 1160, 1165 (5th Cir. 1988)). In its most famous formulation, the "general rule for determining whether a case raises a federal question," *id.* at 917, provides that a suit typically "arises under the law that

---

[2] Although it listed federal question jurisdiction as a basis of jurisdiction in its notice of removal, Bank of America invoked only diversity jurisdiction in its supplemental briefing on subject-matter jurisdiction in this Court.

creates the cause of action," *Am. Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260 (1916).

In their notice of removal, Bank of America and MERS declared that the Smiths' pro se complaint contained both a federal claim and a state-law claim that was preempted by federal law. We disagree.

The federal claim identified by the defendants, a violation of the Fair Debt Collection Practices Act, traces to a single sentence in the "facts" section of the Smiths' complaint: "[Bank of America] failed to adhere to the Fair Debt Collection Practice Act, as all 3rd party debt collectors are required to do." The Smiths did not cite the United States Code section corresponding to the Act, nor did they reference the statute at any other point in their complaint— including, critically, the subsections in which they alleged their causes of action. Further, as the Smiths point out in their supplemental brief, they originally sought "[a]dditional [t]reble [d]amages for all intentional and knowing violations"—a form of relief available under the Texas Debt Collection Act, as a "tie-in" to the Texas Deceptive Trade Practices Act, but not under the Fair Debt Collection Practices Act. *Compare* Tex. Fin. Code Ann. § 392.404(a) (TDCA), *and* Tex. Bus. & Com. Code Ann. § 17.50(b)(1) (TDTPA), *with* 15 U.S.C. § 1692k(a) (FDCPA). Even construing the Smiths' pro se pleadings liberally, as we must, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam), we cannot say that the Smiths' well-pleaded complaint stated a claim under the Fair Debt Collection Practices Act.[3]

---

[3] *Cf. Howery*, 243 F.3d at 917–18 (rejecting the defendant's argument that "by mentioning the rules, regulations, and statutes of the FTC," the plaintiff "stat[ed] a claim under the federal Fair Credit Reporting Act" because the plaintiff's "mention of federal law merely served to describe types of conduct that violated [state law], not to allege a separate [federal] cause of action," and citing the absence of any "explicit mention of any specific federal statute or regulation" in the complaint). Notably, the magistrate in this case also perceived no federal claim, characterizing the Smiths' complaint as containing "a single cause of action for wrongful foreclosure."

No. 14-50256

As for preemption, Bank of America and MERS contended that the Smiths' wrongful-foreclosure claim was preempted by the Home Owners' Loan Act because "it purport[ed] to impose requirements on a federal savings bank regarding '[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages.'" However, it is well settled that only "complete preemption" can support federal question jurisdiction upon removal if the plaintiff's well-pleaded complaint contains no federal claims. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6–8 (2003). The defendants made no effort to argue that this onerous standard had been satisfied, either in their notice of removal or in their briefing to this Court.[4] Accordingly, we find no basis for federal question jurisdiction.

## B.    Diversity Jurisdiction

The party invoking diversity jurisdiction bears the burden of proving that complete diversity exists. *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988). "We have stated repeatedly that when jurisdiction depends on citizenship, citizenship must be '*distinctly* and *affirmatively* alleged.'" *Id.* (quoting *McGovern v. Am. Airlines, Inc.*, 511 F.2d 653, 654 (5th Cir. 1975)).

Where, as here, a party claims improper joinder, "[t]he party seeking removal bears a heavy burden," *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (en banc): it must show either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court," *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003). To satisfy the latter standard, the removing party must

---

[4] Indeed, in their notice of removal—the only filing in which they even attempted to argue the existence of federal question jurisdiction—the defendants made no mention of the complete-preemption doctrine, and they cited only three cases from district courts in Texas and California in support of their preemption argument.

"demonstrate[] that there is no possibility of recovery by the plaintiff against [the] in-state defendant"—or, stated differently, that "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against" that defendant in state court. *Smallwood*, 385 F.3d at 573. In making this determination, the court "resolve[s] all contested factual issues and ambiguities of state law in favor of the plaintiff." *Gasch*, 491 F.3d at 281. Further, "[w]e do not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but look only for a *possibility* that the plaintiff *might* do so." *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308–09 (5th Cir. 2005) (emphases added). And we ultimately resolve "any doubt about the propriety of removal . . . in favor of remand." *Gasch*, 491 F.3d at 281–82.

This is a threshold inquiry: when confronted with an allegation of improper joinder, the court must determine whether the removing party has discharged its substantial burden before proceeding to analyze the merits of the action. As we observed in *Smallwood*:

> When a defendant removes a case to federal court on a claim of improper joinder, the district court's first inquiry is whether the removing party has carried its heavy burden of proving that the joinder was improper. Indeed, until the removing party does so, the court does not have the authority to do more; it lacks the jurisdiction to dismiss the case on its merits. It must remand to the state court.

385 F.3d at 576. This approach is consistent with "the well-established rule that a trial court must determine the existence of subject matter jurisdiction before reaching the merits of a case." *Getty Oil*, 841 F.2d at 1261.

Indeed, we have found error where district courts have failed to adhere to this strict order of operations, and we have declined to assume that a district court that has adjudicated the merits of a claim has necessarily made an implicit prior determination of its own jurisdiction. *See Stafford v. Mobil Oil*

No. 14-50256

*Corp.*, 945 F.2d 803, 804–06 (5th Cir. 1991) (vacating an injunction for lack of subject-matter jurisdiction where the plaintiff inadequately pleaded diversity, the record did not establish complete diversity, and the district court made no express jurisdictional finding or ruling before issuing the injunction); *Getty Oil*, 841 F.2d at 1258–61, 1264 (holding that the removing party did not discharge its burden to prove complete diversity and improper joinder, that "the district court erred by failing to address the important jurisdictional issues before reaching the merits of the case," and that the district court's failure to assess its own jurisdiction necessitated remand); *cf. Gasch*, 491 F.3d at 279–80, 284 (vacating summary judgment for want of subject-matter jurisdiction where the removing defendants claimed improper joinder of the sole non-diverse defendant but the district court never dismissed that defendant, the plaintiffs never moved to remand, and the district court granted summary judgment to all defendants).

The Smiths did not affirmatively plead the citizenship of any of the defendants, either in their original complaint or in their amended complaint.[5] In their notice of removal, the defendants identified Bank of America as a citizen of North Carolina and MERS as a citizen of Virginia,[6] while they contended only "on information and belief" that the Smiths, BDFTE, NDEX, Porter, and Bastian were all citizens of Texas. Nevertheless, the defendants argued that removal was proper because each of the purported Texas-citizen defendants had been improperly joined and, moreover, each was a nominal defendant. However, neither the district court nor the magistrate ever ruled

---

[5] Significantly, only two defendants were common to both complaints: Bank of America and NDEX. The sole evidence in the record pertaining to NDEX's citizenship appears in the defendants' notice of removal, in which the defendants aver "on information and belief" that NDEX is a citizen of Texas—the same state of citizenship as the Smiths.

[6] Contrary to this conclusion in the defendants' notice of removal, MERS actually appears to be a citizen of both Virginia and Delaware. *See* 28 U.S.C. § 1332(c)(1).

9

No. 14-50256

on the defendants' claim of improper joinder—or, more fundamentally, ascertained the grounds for federal subject-matter jurisdiction.[7] We decline to determine on this record whether the defendants successfully bore their "heavy burden" to prove improper joinder and thereby establish complete diversity, and we leave it to the district court to conduct this threshold analysis in the first instance.

## III.  CONCLUSION

For the foregoing reasons, we VACATE the district court's judgment and REMAND with instructions to assess the basis of federal subject-matter jurisdiction.

---

[7] Although the Smiths neither contested the allegations in the removal notice nor moved for remand, it is black-letter law that subject-matter jurisdiction cannot be waived or "conferred by consent, agreement, or other conduct of the parties," *Gasch*, 491 F.3d at 284 (internal quotation marks omitted).